In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-19-00052-CV
_____

STEPHEN HARTMAN, Appellant

V.

ANTHONY BARKER, ET AL, Appellees

On Appeal from the 58th District Court
Jefferson County, Texas
Trial Cause No. A-198,246

MEMORANDUM OPINION

In nine issues before the Court, Stephen Hartman appeals the trial court's granting of Anthony Barker, Stephen Carr, Kim Carter, Misty Craver, Tiffani Decuir, Chad Kolander, Ann Landry, Sharon Bill-Williams, Tom Maness, Tom Rugg, Ed Shettle, Tim Smith, E. Perry Thomas, Clint Woods, Mitch Woods, Tish Jones, and Jodee Roach's ("Jefferson County Employees") plea to the jurisdiction, motion for summary judgment, and motion to dismiss under the Texas Tort Claims

1

Act (TTCA) sections 101.106(a), (e), and (f). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106. Hartman argues that the TTCA's election of remedies does not bar his lawsuit and the Jefferson County Employees are not entitled to witness immunity and prosecutorial immunity. We affirm.[1]

## I. Background

The background facts of this case have been discussed in this Court's prior opinions; therefore, we will only discuss the facts necessary for our review of this case. *See Walker v. Hartman*, 516 S.W.3d 71 (Tex. App.—Beaumont 2017, pet. denied); *Hartman v. Estate of Alford*, No. 09-19-00051-CV, 2019 WL 4493329 (Tex. App.—Beaumont Sept. 19, 2019, pet. denied) (mem. op.); *Hartman v. Broussard*, No. 09-19-00053-CV, 2020 WL 578795 (Tex. App.—Beaumont Feb. 6, 2020, no pet. h.) (mem. op.). On May 28, 2013, Hartman attempted to serve Judge Layne Walker of the 252nd District Court in Jefferson County with federal process papers.[2] Walker was on the bench and working the court's docket as Hartman sat in the gallery of the courtroom. Hartman stated that after waiting for almost an hour, he quietly approached the bar of the courtroom and spoke to the bailiff about serving

---

[1] Jefferson County Employees filed a cross appeal but subsequently notified this Court that they are dismissing their cross appeal.

[2] Hartman had previously attempted to serve Walker at his residence, which resulted in an altercation between the two, according to Hartman.

Walker with process papers. After speaking to the bailiff, Hartman said that he was attacked by another bailiff and arrested. Hartman asserted that he was not disruptive and that he did not intend to serve Walker while he was on the bench. Hartman was placed in a holding cell within the courtroom and not told of his charges until he was transferred to the Jefferson County Jail that evening. Hartman was eventually allowed to serve Walker in the jury room.

After his arrest, Hartman's belongings, including his cell phone and a recording device, were confiscated. Hartman asserted that Walker's bailiff illegally accessed the recording device and downloaded a copy of its contents with the help of the bailiff's wife. Hartman stated that Walker, the courtroom bailiffs, Walker's courtroom staff, and Sheriff's Department employees illegally viewed the contents of the recording device. Hartman alleged that Walker, along with employees of the Jefferson County District Attorney's office and Sheriff's Department employees, perpetuated a conspiracy in "covering up all these illegalities" by demanding falsified witness affidavits from those present in the courtroom during Hartman's arrest, including "instructing the Sherriff Deputies to prepare falsified arrest reports and probable cause affidavits." Hartman complained that Walker, the District Attorney's Office, and the Sherriff's Department knew of the falsified, perjured affidavits and probable cause arrest reports, but still proceeded with an illegal

prosecution against Hartman. According to Hartman, the Jefferson County Employees acted in a "civil conspiracy to perpetuate the Texas torts . . . through collective misconduct with a unity of purpose and goals, in order to damage Hartman."[3]

Hartman filed a federal lawsuit against Walker, the bailiffs, Sheriff's Department employees, and the individuals who witnessed and provided affidavits about Hartman's arrest. In his federal lawsuit, Hartman asserted § 1983 claims against both Jefferson County and the individuals named in his lawsuit, and "against all Defendants . . . for numerous pendent state law claims." In his second amended federal lawsuit, Hartman alleged Texas tort claims against the defendants in their individual capacity. In response, Jefferson County filed a Motion for Dismissal pursuant to section 101.106 of the TTCA and an Amended 12(b)(6) Motion to Dismiss. Hartman's federal lawsuits were ultimately dismissed. Hartman then filed lawsuits in State court arguing Texas tort claims against Walker, the bailiffs, Sheriff's Department employees, Walker's courtroom staff, employees of the District Attorney's Office, and the individuals who signed the affidavits.

---

[3] Hartman was charged with a "Class B misdemeanor of Hindering [a] Proceeding by Disorderly Conduct." *See* Tex. Penal Code. Ann. § 38.13. His charges were dismissed.

Jefferson County Employees filed a Plea to the Jurisdiction and/or Motion to Dismiss arguing that under the TTCA, Hartman elected to sue the county in Federal Court and is therefore barred from pursuing any claims regarding tortious action against the individual Jefferson County Employees. In their plea to the jurisdiction, the Jefferson County Employees noted:

> In [Hartman's] Second Amended Complaint, he brought a tort suit against the County and brought tort claims against County Employees[.]. . . As such, [Hartman] has exercised his irrevocable election to sue the County for his Texas tort claims and this suit against the County Employees must be dismissed. . . . In response to the County's Amended Motion to Dismiss [Hartman's] Second Amended Complaint filed in the Federal Court proceeding, [Hartman] falsely claimed that he had only sued the individual employees, not the County, for any state law torts. Above, the County Employees have extensively quoted [Hartman's] Second Amended Petition wherein it is clear that [Hartman] did, in fact, bring state law tort claims against the County in his Second Amended Complaint. Either way, § 101.106(a), (e) and (f) bar [Hartman's] suit against the County Employees. Tex. Civ. Prac. & Rem. Code §§ 101.106(a), (e) and (f).

Hartman answered, arguing that he only sued Jefferson County under § 1983 in his federal lawsuit and not under the TTCA and that he sued Jefferson County Employees "in their individual capacities" for Texas torts. Hartman opposed the Jefferson County Employees' Plea to the Jurisdiction and/or Motion to Dismiss. After a hearing, the trial court granted Jefferson County Employees' motion and dismissed Hartman's claims against them with prejudice. The trial court ordered that "[t]he Jefferson County Employees' Motion is GRANTED on Texas Tort Claims

5

Act, witness immunity, and prosecutorial immunity[.]" The trial court then signed a separate order denying Hartman's motion for continuance. Hartman timely filed this interlocutory appeal.

## II. Standard of Review

Section 51.014 of the Texas Civil Practice and Remedies Code gives us jurisdiction over this interlocutory appeal of the trial court's order granting the Jefferson County Employees' plea to the jurisdiction. *See* Tex. Civ. Prac & Rem. Code Ann. § 51.014(a)(8); *see also Lenoir v. Marino*, 469 S.W.3d 669, 673 n.2 (Tex. App.—Houston [1st Dist.] 2015) (op. on reh'g), *aff'd*, 526 S.W.3d 403 (Tex. 2017). "A plea questioning the trial court's jurisdiction raises a question of law that we review *de novo*." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007) (citing *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

## III. Analysis

### A. TTCA Election of Remedies

The TTCA provides for an election of remedies that forces a plaintiff at the outset of his lawsuit to determine whether to sue a government employee in their individual capacity or to sue the governmental employer. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). Once the Plaintiff makes this election, the TTCA

6

"immediately and forever" bars the plaintiff from suing the other in the same capacity. *Molina v. Alvarado*, 463 S.W.3d 867, 870 (Tex. 2015) (citing Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a)–(b)).

> This [election of remedies] provision was incorporated into the TTCA to prevent plaintiffs from circumventing the TTCA's damages cap by suing government employees, who were, at that time, not protected. It was expanded in 2003, as part of a comprehensive effort to reform the tort system, with the apparent purpose of forcing a plaintiff "to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment, such that the governmental unit is vicariously liable."

*Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 846 (Tex. 2018) (citations omitted). The Texas Supreme Court has warned litigants to "proceed cautiously" before initiating suit under the TTCA because the election has "irrevocable consequences." *Garcia*, 253 S.W.3d at 657. While generally Texas Rule of Civil Procedure 65 provides that any subsequent amended pleadings supersede the original filing, we defer to the statute if a statute provides contradictory language. *Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios*, 542 S.W.3d 530, 538 (Tex. 2017); *see also* Tex. R. Civ. P. 65. Section 101.106(a) of the TTCA provides, "The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). The statute

7

specifically states that an election occurs when the government employer is sued and bars recovery against an individual employee of the governmental unit. *See id*. Our sister court in Houston explained that

> [s]ection 101.106(a) refers to "[t]he filing of a suit under this chapter against a governmental unit;" it does not refer to the numerical designation in the caption of the pleading by which a plaintiff has filed suit against a governmental unit. The dispositive election occurs when the governmental employer is sued—regardless of whether the governmental employer is sued alone or in tandem with the employee, and regardless of whether the governmental employer is sued in the "original" petition or an "amended" petition.

*Hintz v. Lally*, 305 S.W.3d 761, 771 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).[4] Any subsequent pleadings cannot avoid the plaintiff's irrevocable election to sue the governmental entity employer. *See Rios*, 542 S.W.3d at 538–39; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a).[5] Therefore, in determining the

---

[4] Hartman argues in this brief that *Hintz* supports his argument that TTCA's election of remedies "occurs in the first state court petition." We are unpersuaded by his argument as it directly contradicts the language of that opinion. *See Hintz v. Lally*, 305 S.W.3d 761, 771 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

[5] We examine Hartman's federal pleadings because as noted by the Texas Supreme Court in *Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios*, it is the filing of the government's motion to dismiss, not its content, that triggers the right to dismissal. 542 S.W.3d 530, 538 (Tex. 2017). When Jefferson County filed a motion to dismiss in Hartman's federal lawsuit, that motion triggered section 101.106's election of remedies and section 101.106's application. Tex. Civ. Prac. & Rem. Code Ann. § 101.106; *see also Stinson v. Fontenot*, 435 S.W.3d 793, 794 (Tex. 2014) (affirming the court of appeals holding that Stinson's suit against the County in federal court entitled Fontenot to dismissal of the claims against him individually in the state court suit under the provisions of the TTCA).

applicability of section 101.106(a), we examine the pleadings, which are not confined to his original petition, to determine when the Plaintiff first asserted allegations against the governmental unit prompting the government to file a motion to dismiss under the TTCA. *See Rios*, 542 S.W.3d at 538.

In his second amended complaint filed in the federal lawsuit, Hartman added Jefferson County (including Jefferson County employees not named in the original federal lawsuit) as a defendant and pleaded the following language:

> Hartman's Texas tort causes of action are set forth in this Complaint, and all incorporated into this section. The intentionally tortious misconduct of each and all of the individual Defendants also constitute negligence per se and gross negligence per se against Hartman[.] All the individual Defendants['] tortious misconduct proximately caused Hartman actual and compensatory damages. Hartman seeks to recover from each and every individual Defendant his compensatory or actual damages proximately caused by the individual Defendants' Texas torts[.]
>
> [ . . . ]
>
> Hartman's tort claim for intentional infliction of emotional distress by all the individual Defendants is not a "gap-filler" tort in this case. All the Defendants' misconduct was truly extreme, outrageous, in open and notorious violation of law and the U.S. Constitution, and were all perpetrated for the specific purpose to cause Hartman severe emotional trauma[.]

Hartman's decision to sue both the Jefferson County Employees individually and their employer, Jefferson County, triggered subsection (a)'s election of remedies. "[S]ubsection (a) bars suit against an employee in his individual capacity." *Stinson*

*v. Fontenot*, 435 S.W.3d 793, 794 (Tex. 2014) (citation omitted). "[U]nder subsection (a), suit against a governmental unit under the TTCA—i.e., filing a tort claim against the governmental unit—bars suit against an 'individual employee' of the unit regarding the same subject matter, regardless of whether immunity has been waived." *Tex. Adjutant Gen.'s Office v. Ngakoue*, 408 S.W.3d 350, 357 n.7 (Tex. 2013) (citations omitted). The Texas Supreme Court explained that "[t]he plain language of the election-of-remedies provision, then, demonstrates that a suit against the government triggers subsection (a)" and will bar a suit against an employee in his individual, rather than official, capacity. *See Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014) (citation omitted). Accordingly, subsection (a)'s applicability hinges on whether the suit is against the government employee in his individual or official capacity. *See id.*

Hartman argues that subsection (a) of the election of remedies provision does not bar the current claims against Jefferson County Employees because in his original federal court complaint, Hartman sued the County for constitutional violations under 42 U.S.C. § 1983. Hartman's Original Complaint filed in federal court alleged claims against the governmental employee defendants individually for state torts that were beyond the course and scope of their employment. Hartman makes the distinction that the original federal complaint did not assert claims against

10

Jefferson County for torts. The whole of Hartman's appeal rests on his contention that the causes of action asserted in his Second Amended Complaint in the federal suit are irrelevant to and did not trigger the election of remedies provision of TTCA § 101.106(a), because a plaintiff's election of remedies occurs when a plaintiff initially files suit and is not affected by any subsequent amendments to those pleadings. In the alternative, Hartman also attempts to argue that although he did not sue Jefferson County for torts in his *original* federal complaint, any analysis is irrelevant because the TTCA is not triggered by the federal complaint. However, both assertions are incorrect. His decision to sue the government and its employees in their individual capacity for alleged tortious conduct in the second amended federal complaint triggered section 101.106(a)'s mandatory dismissal of the individual defendants. This election is irrevocable, and he is barred under section 101.106(a) from proceeding against the individual employees in their individual capacities.[6] Jefferson County Employees are entitled to dismissal under section

---

[6] The Supreme Court stated in *Mission Consol. Indep. Sch. Dist. v. Garcia* that

> [u]nder the Tort Claims Act's election scheme, recovery against an individual employee is barred and may be sought against the governmental unit only in three instances: (1) when suit is filed against the governmental unit only, [Tex. Civ. Prac. & Rem. Code Ann.] § 101.106(a); (2) when suit is filed against both the governmental unit and its employee, [Tex. Civ. Prac. & Rem. Code Ann.] § 101.106(e); or (3) when suit is filed against an employee whose conduct was within

11

101.106(a). "In short, section 101.106's door swings in just one direction." *Hintz*, 305 S.W.3d at 769. "This one-way door comports with the legislature's goal to address efforts to circumvent the Tort Claims Act's limits by litigants who sued governmental employees individually instead of their governmental employers." *Id.* (citation omitted); *see Lenoir*, 469 S.W.3d at 675 (citations omitted) ("If the plaintiff sues the governmental unit, she is forever barred from suing the governmental unit's employees. . . . Because it is an irrevocable decision, 'a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually.' This law 'strongly favors

---

the scope of his or her employment and the suit could have been brought against the governmental unit, [Tex. Civ. Prac. & Rem. Code Ann.] § 101.106(f).

253 S.W.3d 653, 657 (Tex. 2008) (citations omitted). But, as noted by the Fourteenth Court of Appeals, although the Supreme Court in *Garcia* explained that subsection (a) bars recovery against an employee when the plaintiff sues only the government unit first, "the *Garcia* court did not state that this subsection applies only to situations in which the plaintiff sues the governmental unit alone." *Fontenot v. Stinson*, 369 S.W.3d 268, 275 n.9 (Tex. App.—Houston [14th Dist.], *aff'd*, *Stinson v. Fontenot*, 435 S.W.3d 793 (Tex. 2014) (citation omitted). We agree that Hartman's election to not only sue the Jefferson County Employees in their individual capacities, but also to sue Jefferson County, triggered the application of subsection (a). *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a); *see also Alexander v. Walker*, 435 S.W.3d 789, 791 (Tex. 2014) (explaining subsection (a) applies when an employee has been sued in his individual and not official capacity); *see also Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 418 (Tex. 2015) (distinguishing that subsections (e) and (f) of the TTCA apply to prevent suits against employees "for conduct within the scope of their employment").

12

dismissal of governmental employees.' But claims against governmental employees may be pursued if they do not fall within the election of remedies categories created by section 101.106").[7]

In many ways, *Fontenot v. Stinson* is analogous to our case. 369 S.W.3d 268 (Tex. App.—Houston [14th Dist.], *aff'd, Stinson v. Fontenot*, 435 S.W.3d 793 (Tex. 2014). In *Fontenot*, the Fourteenth Court of Appeals held that a county employee was entitled to dismissal of the plaintiff's claims because of the plaintiff's irrevocable election under the TTCA. *Id*. at 269. The plaintiff filed suit against a Harris County sheriff's deputy for "various intentional torts, including slander, civil conspiracy, 'trespass, assault and battery, intentional infliction of emotional distress, wrongful arrest, false imprisonment, and malicious prosecution[.]'" *Id*. Subsequent to this filing, the plaintiff filed suit in federal court against Harris County, among others. *Id*. After removal of the plaintiff's claim against the sheriff's deputy to

---

[7] While Hartman never asserts that his tort allegations come under the TTCA, we note that "[b]ecause the [TTCA] is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the TTCA]' for purposes of section 101.106." *Garcia*, 253 S.W.3d at 659 (citation omitted). This is true for intentional torts, including malicious prosecution, official oppression and harassment claims. *Johnson v. Boehnke*, No. 03-19-00200-CV, 2019 WL 4458797, at *3 (Tex. App.—Austin Sept.18, 2019, no pet.) (mem. op.) (citations omitted).

federal court, the plaintiff's claims were consolidated. *Id*. at 270. Harris County then

filed a Rule 12(b)(6) motion requesting dismissal of the plaintiff's complaints

against them. *Id*. Ultimately, the federal court dismissed the plaintiff's claims against

Harris County and remanded the sheriff deputy's case to state court for lack of

subject matter jurisdiction. *Id*. The sheriff deputy then moved for summary judgment

arguing he was protected by immunity under the TTCA sections (a), (e), and (f). *See*

*id*. The trial court denied his motion, and his appeal to the Fourteenth Court of

Appeals followed. *See id.*

In its decision, the Court of Appeals reasoned that the plaintiff's suit in Federal

Court was brought "under this chapter" for purposes of the TTCA's election of

remedies because "a suit alleging intentional torts against a governmental unit is a

suit 'under this chapter' for purposes of subsection (a)." *Id.* at 272. The court noted

that although the plaintiff attempted to allege § 1983 claims against Harris County,

she also "unambiguously" alleged common law torts against Harris County, and as

such, her "broadly alleged tort claims" established that she filed suit against a

governmental unit as provided in section 101.106(a).[8] *Id.* at 274–75. After

---

[8] Although similar in many respects, one distinction in *Fontenot* was that the plaintiff sued Fontenot in his official capacity, whereas here, Hartman argues that he sued the Jefferson County Employees in their individual capacities. The Supreme Court affirmed *Fontenot*, but it noted that the lower court incorrectly applied section 101.106(a) because the sheriff's deputy was sued in his official capacity and not his

determining the applicability of the TTCA election of remedies to the plaintiff's claims, the Court held that "when [the plaintiff] filed suit against Harris County, the filing constituted an irrevocable election against Harris County and immediately and forever barred any suit or recovery against [the sheriff deputy] regarding the same subject matter." *Id*. at 276. The Court noted that "[t]his conclusion is not altered by the fact that her suit against Harris County was the second-filed suit." *Id.* Similarly, Hartman's claims against the Jefferson County employees in their individual capacities are barred under the provisions of TTCA subsection (a).

Accordingly, we overrule Hartman's first issue.[9]

---

individual capacity. *See Fontenot*, 435 S.W.3d at 794 ("[S]ubsection (f) is the appropriate avenue for dismissing a government employee considered to have been sued in his official capacity, while subsection (a) bars suit against an employee in his individual capacity."). Hartman affirms in his appellate brief that he is suing the Jefferson County Employees in their individual capacities only.

[9] Because we affirmed the trial court's decision regarding section 101.106(a) of the Texas Torts Claims Act, we need not address whether he is entitled to dismissal under section 101.106(f). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.106(a), (f); *see* Tex. R. App. P. 47.1 (requiring the appellate court to issue a written opinion that is as brief as practicable but that addresses all issues necessary to a final disposition of the case being appealed). We note that per the Texas Supreme Court, section 101.106(f) applies to individuals sued in their official capacity, while section 101.106(a) applies to those employees sued in their individual capacity. *Alexander*, 435 S.W.3d at 791; *Fontenot*, 435 S.W.3d 793.

**B. Witness Immunity**

Witness immunity is well established in English common law. *See Briscoe v. LaHue*, 460 U.S. 325, 330–31 (1983) (discussing witness immunity in the context of § 1983 claims); *Lombardo v. Traughber*, 990 S.W.2d 958, 960 (Tex. App.—Beaumont 1999, pet. denied). In *Briscoe,* the United State Supreme Court extensively examined English common law and American jurisprudence when addressing witness immunity. *See Briscoe*, 460 U.S. at 330–46. Ultimately, the Supreme Court held that the principles of absolute immunity that apply to judges and prosecutors likewise extend to witnesses and are indispensable in bringing litigation "to a just – or possibly unjust – conclusion[.]" *Id.* at 345–46. Albeit a harsh consequence for the injured party of a perjurious statement, the court reasoned that civil redress was unnecessary because a witness could face criminal charges for perjurious statements, which provided a sufficient deterrent. *Id.* at 342; *see also Rehberg v. Paulk*, 566 U.S. 356, 367 (2012); *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex. 2015).

In examining whether a witness is entitled to absolute immunity, we take a functional approach. *See Briscoe*, 460 U.S. at 342–43. "In other words, a party is entitled to absolute immunity when the party is acting as an integral part of the judicial system or an 'arm of the court.'" *Delcourt v. Silverman*, 919 S.W.2d 777,

782 (Tex. App—Houston [14th Dist.] 1996, no pet.) (quoting *Briscoe*, 460 U.S. at 335). *Briscoe* elaborated on this concept by examining the witness's function and the witness's relationship to the judicial process.

> [O]ur cases clearly indicate that immunity analysis rests on functional categories, not on the status of the defendant. A police officer on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury.

*Briscoe*, 460 U.S. at 342 (citations omitted).

The Texas Supreme Court has long recognized that communications made in judicial proceedings are privileged and has extended that privilege to pretrial proceedings, "including affidavits filed with the court." *Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994) (citing *James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982)). And while *Bird* concerned immunity and liability in relation to defamation and slander suits, several of our sister courts have extended witness immunity to all civil cases. *See In re Hinterlong*, 109 S.W.3d 611, 636 (Tex. App.—Fort Worth 2003, no pet.) ("Because the proper administration of justice requires full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits, Texas courts have consistently applied the privilege to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim and even though the communications might otherwise subject a witness to statutory

17

liability."); *Crain v. Unauthorized Practice of Law Comm. of the Sup. Ct. of Tex.*, 11 S.W.3d 328, 335 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) ("This Court has held that the judicial privilege is not limited to claims of libel or slander, and it should be applied to claims arising out of communications made in the course of judicial proceedings, regardless of the label placed on the claim."); *Martin v. Darnell*, 960 S.W.2d 838, 845 (Tex. App.—Amarillo 1997, no pet.) (noting that it is a "well established rule granting witness immunity from civil liability for statements made in a judicial proceeding"). We agree.

> At common law, the absolute immunity of parties and witnesses from subsequent liability for their testimony in judicial proceedings is well established. Any communication, even perjured testimony, made in the course of a judicial proceeding, cannot serve as a basis for a suit in tort. The administration of justice requires "full and free disclosure from witnesses unhampered by fear of retaliatory lawsuits."

*McIntyre v. Wilson*, 50 S.W.3d 674, 682 (Tex. App.—Dallas 2001, pet. denied) (citations omitted).

In his brief, Hartman argues that the affidavits provided by Kim Carter, Misty Craver, Tiffani Decuir, E. Perry Thomas, Clint Woods, Tish Jones, and Jodee Roach were "not provided in connection with a court's ongoing adjudication of a case[, and] [a]ll these affidavits were prepared before Walker illegally hired [the District Attorney Pro Tem]." We are not persuaded by these arguments. It is undisputed that Hartman was arrested, and the affidavits were prepared and presented to the Sheriff's

18

Department in their ongoing investigation of Hartman's arrest. Assuming without deciding that Hartman's arrest was illegal, the affidavits prepared and presented in the investigation were made in the course of a judicial proceeding (i.e., the investigation into Hartman's arrest) and are covered by absolute witness immunity. "We are convinced that Texas law regards its privilege for communications made in the context of judicial, quasi-judicial, or legislative proceedings as a complete immunity from suit, not a mere defense to liability." *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999). [10]

---

[10] In support of his argument that the employees are not entitled to witness immunity, Hartman states that "[t]here is no general right for government employees to commit perjury." Hartman is incorrect. The United States Supreme Court along with Texas Courts have established that witness protection applies to perjurious testimony. *See Briscoe v. LaHue*, 460 U.S. 325, 345 (1983) ("There is, of course, the possibility that, despite the truth-finding safeguards of the judicial process, some defendants might indeed be unjustly convicted on the basis of knowingly false testimony by [witnesses.] . . . [T]he absolute witness immunity bars another possible path to recovery for these defendants. But we have recognized, again and again, that in some situations, the alternative of limiting the official's immunity would disserve the broader public interest."); *see also Tumlinson v. Barnes*, No. 03-15-00642-CV, 2017 WL 1832488, at *3 n.17 (Tex. App.—Austin May 5, 2017, no pet.) (mem. op.) ("Texas does not recognize a civil cause of action for perjury and [] witnesses and parties who testify in judicial proceedings are entitled to absolute immunity from subsequent civil liability for their testimony, even perjured testimony.") (citations omitted).

19

Therefore, we hold that Kim Carter, Misty Craver, Tiffani Decuir, E. Perry Thomas, Clint Woods, Tish Jones, and Jodee Roach have absolute witness immunity and overrule Hartman's second issue.[11,]

## C. Prosecutorial Immunity

The trial court ruled "the motion should be granted on the issue of prosecutorial immunity as to the following defendants: Tom Maness, Tom Rugg, Ed Shettle, E. Perry Thomas, and Clint Woods."[12] Each defendant was an employee of the Jefferson County District Attorney's office at the time of Hartman's arrest and

---

[11] Although we have previously noted that witness immunity may not extend to a conspiracy to provide false testimony, Hartman has presented no evidence to this Court that these witnesses were involved in a conspiracy to submit false affidavits. *See Hartman v. Estate of Alford*, No. 09-19-00051-CV, 2019 WL 4493329, at **3–4 (Tex. App.—Beaumont Sept. 19, 2019, pet. denied) (mem. op.) (citing *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994)). Hartman's allegations that other defendants were involved in a conspiracy and later indicted for their actions does not provide any evidence that the affidavits submitted by these particular witnesses was not based on their own subjective views of Hartman's arrest. As such, we are unpersuaded that the affidavits were produced in a conspiracy to present false testimony.

As noted in *Marshall v. Odom,* Federal Circuit Courts of Appeals that have addressed this issue are divided on whether absolute immunity applies to civil conspiracies to fabricate evidence, but a majority of circuits have held that absolute immunity extends to civil conspiracy. 156 F. Supp. 2d 525, 533–34 (D.Md. 2001) (noting that the Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuit Courts of Appeals support absolute immunity and Second and First Circuits do not support absolute immunity).

[12] We have already concluded that Clint Woods and E. Perry Thomas are entitled to witness immunity, and therefore, we will not address whether they are entitled to prosecutorial immunity as granted by the trial court.

20

during the subsequent events that form the basis of Hartman's lawsuit. In arguing that the trial court erred by granting prosecutorial immunity to the district attorneys, Hartman states "Maness, Rugg, Shettle, Thomas, and Woods are not prosecutors in this case. Their job title is irrelevant." Hartman then details actions which he believes show they did not act as prosecutors in this case.

Prosecutors enjoy absolute immunity under common law. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). "Texas courts have followed federal courts and consistently held as a matter of law that absolute immunity extends to quasi-judicial officers, including prosecutors performing such typical prosecutorial functions as initiating criminal prosecution and presenting the State's case." *Brown v. Lubbock Cty. Comm. Ct.*, 185 S.W.3d 499, 505 (Tex. App.—Amarillo 2005, no pet.) (citing *Oden v. Reader*, 935 S.W.2d 470, 474–75 (Tex. App.—Tyler 1996, no pet.)). "Activities intimately associated with the judicial phase of the criminal process, such as initiating a prosecution and presenting the State's case, are functions to which absolute immunity applies with full force." *Lesher v. Coyel*, 435 S.W.3d 423, 430 (Tex. App.—Dallas 2014, pet. denied).

Prosecutorial immunity has also been extended to bad acts performed by prosecutors. *See Imbler*, 424 U.S. at 427 (noting that absolute immunity applies to a prosecutor who engages in "malicious or dishonest action"); *see also Burns v. Reed*,

21

500 U.S. 478, 489–90 (1991) (explaining that "prosecutors and other lawyers were absolutely immune from liability for damages at common law for making false or defamatory statements in judicial proceedings . . . and also for eliciting false and defamatory testimony from witnesses"); *Lesher*, 435 S.W.3d at 430–31 (applying absolute immunity to a prosecutor accused of withholding grand jury handbook from grand jury and presenting inadmissible evidence); *Clawson v. Wharton County*, 941 S.W.2d 267, 272 (Tex. App.—Corpus Christi, 1996 pet. denied) (determining that a prosecutor accused of taking bribes still enjoys absolute immunity because "[a]bsolute immunity will shelter a prosecutor even should he act maliciously, wantonly, or negligently"); *Gentry v. Smith*, No. 05-18-01181-CV, 2019 WL 4033947, at *3–4 (Tex. App.—Dallas Aug. 27, 2019, no pet.) (mem. op.) (concluding a prosecutor accused of falsifying a plea agreement was entitled to absolute immunity).

This absolute immunity is effective against all civil lawsuits whether the allegations are lodged against the individual in his personal or official capacity. *Clawson*, 941 S.W.2d at 273; *see also Lesher*, 435 S.W.3d at 430; *Brown*, 185 S.W.3d at 505. A prosecutor is entitled to absolute immunity for their judgment and presentation of the evidence and conduct at trial. *See Imbler*, 424 U.S. at 427. Allowing anything less than absolute immunity would result in an "adverse effect

22

upon the criminal justice system" and "better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *See id.* at 428 (citations omitted). Qualifying a prosecutor's immunity "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id*. at 427–28.

Hartman argues that absolute prosecutorial immunity is "qualified immunity" and does not apply to Maness, Shettle, and Rugg, because "[t]here is no immunity for actions occurring before there is probable cause for an arrest - - which includes all the investigative functions." We disagree. The United State Supreme Court has determined that prosecutorial immunity is absolute. *See id.* at 427–29. This absolute immunity applies to any actions that are "intimately associated with the judicial phase of the criminal process." *Clawson*, 941 S.W.2d at 272. When analyzing this issue, a court should follow a "functional approach" and review "the nature" of the function and not "the identity of the actor who performed it[.]" *See Buckley v. Fitzsimmons*, 509 U.S. 259, 269–71 (1993) (citations omitted). This instruction is broad enough to include a prosecutor's drafting of search warrants. *See id.* Hartman's allegations against Maness and Shettle that they participated in "falsifying evidence and writing a perjured search warrant[,]" clearly fall under

absolute prosecutorial immunity, regardless of whether Maness and Shettle had malicious intent. Therefore, we overrule Hartman's fourth issue.[13]

## IV. Conclusion

Having overruled Hartman's first, second, and fourth issues regarding the TTCA, witness immunity, and prosecutorial immunity, we affirm the trial court's judgment.[14]

---

[13] Hartman alleges in his petition that his claims against Rugg arise solely from his failure to answer nine public information requests sent on Hartman's behalf from Hartman's employer. Hartman asserts in his brief that Rugg is not entitled to prosecutorial immunity because he is a former civil assistant district attorney and was never a prosecutor. Hartman's own pleadings admit that Rugg reported to Maness as his direct supervisor and that Rugg was tasked with handling all public information requests for the district attorney's office. Hartman also admits that his public information request dealt solely with information regarding the investigation and subsequent criminal charges against Hartman. By Hartman's own admissions, we conclude that Rugg's conduct in reviewing and responding to public information requests based on the arrest and investigation of Hartman was a part of his duties of his employment as an assistant district attorney and the preparation and investigation into Hartman and is covered by absolute prosecutorial immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 278 (1993) (explaining that prosecutor's actions are entitled to absolute immunity when they involve "the initiation of a prosecution, the presentation of the State's case in court, or actions preparatory for these functions," and distinguishing actions not entitled to absolute immunity such as statements to the press that have no "functional tie to the judicial process").

[14] Because we determine the trial court is without jurisdiction to consider Hartman's claims pursuant to subsection 101.106(a), we do not address the remainder of Hartman's issues as they are not necessary for final disposition of the appeal. *See* Tex. R. App. P. 47.1.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on June 10, 2019
Opinion Delivered February 20, 2020

Before McKeithen, C.J., Kreger and Horton, JJ.