Chief Justice Hecht delivered the opinion of the Court.
*532 A public employee may be individually liable for his tortious conduct outside the general scope of employment, but section 101.106 of the Texas Tort Claims Act ("the Act")[1] "requir[es] a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone".[2] If the plaintiff nevertheless sues both employer and employee, section 101.106(e) requires that the employee "immediately be dismissed" on the employer's motion. We hold that this statutory right to dismissal accrues when the motion is filed and is not impaired by later amendments to the pleadings or motion. We also conclude that the record in this case establishes that the individuals sued were employees of a state agency. We reverse the judgment of the court of appeals,[3] render judgment in part, and remand the case to the trial court.
I
The relationship between Dr. Tomas G. Rios, a first-year resident, and faculty physicians at the University of Texas Health Science Center at Houston became fractious soon after he entered the Cardiovascular Diseases Training Program. Rios complained to the Center's compliance office of patient endangerment, a need for improvement in the quality of treatment, and other failings in the Center's operation. Previously, Dr. Francisco Fuentes, director of the residency program, and Dr. Bella Patel, a faculty member, had discussed with Rios their concerns about his patient care and professionalism. Dr. Richard Smalling, another faculty member, also told Fuentes that Rios' performance was "substandard and antagonistic." Citing several other faculty and staff criticisms, Fuentes ultimately wrote to Rios that he did not "possess the clinical competencies necessary to function effectively" and would not be reappointed to the program for a second year.
Rios sued the Center along with Fuentes, Patel, Smalling, and a fourth faculty physician, Dr. Ruckshanda Majid ("the Doctors"), alleging that together they had taken "steps to discredit [his] reputation and harm [his] future as a medical doctor" and had "published false and misleading statements about [him] to the Texas Medical Board". Rios asserted that the Center had breached its residency contract with him and that the Center and Doctors had defamed him. Rios also pleaded that the Center, "separately[ ] and through" some or all of the Doctors, had tortiously interfered with his contract with the Center and future business relationships.
The Attorney General answered for the defendants and moved to dismiss all but the tort claims against the Center. The motion stated that the contract claim against the Center, a state agency, was barred by sovereign immunity[4] and that *533 the tort claims against the Doctors, "all of whom are employees of [the Center]", were required to be dismissed under section 101.106(e) of the Act. That provision states: "If a suit is filed under [the Act] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."[5] As tort claims against a governmental unit, Rios' tort claims against the Center were "under [the Act]".[6]
Rios then amended his petition to drop his tort claims against the Center, leaving the Doctors as the only tort defendants, and thus no longer suing "under [the Act] ... both a governmental unit and any of its employees".[7] The amended petition's only claim against the Center was for breach of contract. The defendants amended their motion to dismiss to refer to Rios' amended petition, but they did not alter in substance their argument for dismissal of the tort claims against the Doctors under section 101.106(e) -that Rios had sued both a governmental unit and its employees. The amended motion reiterated that the Doctors were all Center employees and added that it was "clear from [Rios' amended petition] that [the Doctors] were acting in the scope of their employment when they allegedly committed torts against [Rios]." To the contrary, Rios responded, it was clear that the Doctors had not acted within the scope of their employment by the Center but as individuals pursuing their own self-interests. Thus, Rios contended, he had sued them as individuals, and section 101.106(e) does not apply.[8] Rios added that he did not even know whether the Doctors were in fact Center employees, suggesting they might be independent contractors.
The trial court dismissed Rios' contract claim against the Center but denied dismissal of his tort claims against the Doctors. On defendants' interlocutory appeal,[9] the court of appeals divided on both reason and result. Justice Higley, in an opinion announcing the court's judgment, reasoned that defendants had the burden to prove the Doctors were Center employees and failed to do so.[10] Chief Justice Radack concurred only in the judgment. In her view, Rios could not, by amending his petition to nonsuit his tort claims against the Center, deprive defendants of a ruling on their original motion, and had they insisted, they would have been entitled to dismissal of the tort claims against the Doctors.
*534 [11] But, she reasoned, when defendants filed an amended motion, their original motion "ceased to exist".[12] At that point, Rios was no longer asserting tort claims against both the Center and the Doctors. Because the amended motion was directed at the amended petition and section 101.106(e) no longer applied, she concluded, the Doctors were not entitled to dismissal.[13]
Justice Keyes dissented. She argued that Rios had not effectively challenged the Doctors' employment by the Center, and defendants were not required to prove an undisputed fact.[14] She also argued that dismissal of the tort claims against the Doctors was compelled by the plain text of section 101.106(e).[15]
We granted defendants' petition for review.[16]
II
We begin with Rios' arguments that the Doctors have not been shown to be Center employees, and even if they were, that section 101.106(e) does not require their dismissal because they acted outside the scope of their employment. Rios' original petition defeats his first argument, and our decision last Term in Laverie v. Wetherbe[17] defeats the second.
The Act waives a governmental unit's immunity from suit when acting through an employee,[18] defined to exclude an independent contractor.[19] Rios alleged as fact that the Center acted "through" the Doctors in tortiously interfering with his employment relationships. Unless the Doctors were Center employees, the Act did not waive immunity for the claim. Assuming Rios intended to plead a viable claim, his allegation was a judicial admission[20] that the Center's actions through the Doctors were through employees, relieving the defendants of having to prove that fact.[21] Indeed, Rios conceded at oral argument in this Court that his original petition "assume[d] that [the Doctors were] employees because ... that's the knowledge that we had at the time." Rios does not argue that *535 his knowledge of the subject ever changed, only that he became less certain.
The status of the Doctors as Center employees is also borne out by defendants' pleadings. The Attorney General has represented the Doctors throughout the case as he is statutorily required to do in certain actions against public servants.[22] Defendants' motion to dismiss, filed by the Attorney General, acknowledged that the Doctors were "all ... employees of [the Center]" "acting within the scope of employment". In language we have recently used, "[b]y filing such a motion, the [Center] effectively confirm[ed] the [Doctors were employees] acting within the scope of employment and that the [Center], not the [Doctors], is the proper party."[23] Thus, at the time the defendants filed their original motion to dismiss, all parties' pleadings established that the Doctors were Center employees.
Rios' argument that the Doctors were not acting in the scope of their employment fares no better. In Laverie, a state university professor, Wetherbe, sued a colleague, Laverie, for defamation, alleging that she fabricated stories about him to sabotage his advancement.[24] Laverie moved for summary judgment under section 101.106(f),[25] a sister provision to section 101.106(e), which states:
If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.[26]
Wetherbe responded that Laverie was not acting in the scope of her university employment because her motivations were personal.[27] The trial court refused to dismiss the case, and the court of appeals affirmed, concluding that Laverie's intentions had not been established.[28]
We reversed. "Government employees", we said, "are not required to prove their subjective intent behind an allegedly tortious act in order to be dismissed from a suit pursuant to the election-of-remedies provision."[29] Rather,
[t]he scope-of-employment analysis[ ] ... remains fundamentally objective: Is there a connection between the employee's job duties and the alleged tortious conduct? The answer may be yes even if the employee performs negligently or is motivated by ulterior motives or personal animus so long as the conduct itself was pursuant to her job responsibilities.[30]
In this case, Rios' tort claims against the Doctors are all based on his allegation that they made false statements about him, including to the Texas Medical Board, in *536 retaliation for his having raised concerns regarding patient welfare at the Center. Whatever the Doctors' subjective intentions and motivations may have been, the statements Rios alleges they made arose from their employment as faculty members at the Center in connection with the operation of its residency program. The connection between their job duties and allegedly tortious conduct, as claimed by Rios himself, places the statements squarely within the scope of their employment at the Center.
III
We now turn to the application of section 101.106(e) to this case. We begin with a brief overview of the Act. We then consider first, the effect of Rios' amended petition on defendants' original motion to dismiss, and second, the effect of defendants' amended motion to dismiss.
A
The Tort Claims Act, as we have said, "provides a limited waiver of immunity for certain suits against governmental entities and caps recoverable damages."[31] But as first passed in 1969, the Act did little to limit claims against public employees, providing only that such claims were barred by a judgment in an action or settlement of a claim against the governmental employer.[32] The provision effectively conferred immunity on employees who otherwise had only qualified immunity.[33] Still, "plaintiffs often sought to avoid the Act's damages cap or other strictures by suing governmental employees, since claims against them were not always subject to the Act."[34] "To prevent such circumvention, and to protect governmental employees," the Legislature enacted a comprehensive election-of-remedies provision in 2003.[35]
Section 101.106 requires a plaintiff to decide on a theory of tort liability before suit is even filed. A plaintiff must "decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable".[36] That decision is "an irrevocable election at the time suit is filed " whether to "su[e] the governmental unit under the Tort Claims Act or proceed[ ] against the employee alone".[37] This early-election requirement "reduce[s] the delay and expense associated with allowing plaintiffs to plead alternatively that the governmental unit is liable because its employee acted within the scope of his or her authority but, if not, that the employee *537 acted independently and is individually liable."[38]
We have warned that "[b]ecause the decision regarding whom to sue has irrevocable consequences, a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually."[39] And we have counseled that when interpreting section 101.106, courts "must favor a construction that most clearly leads to the early dismissal of a suit against an employee when the suit arises from an employee's conduct that was within the scope of employment".[40]
B
As we have noted, when a plaintiff sues both a governmental unit and its employees in tort, as Rios did here, section 101.106(e) requires that "the employees shall immediately be dismissed on the filing of a motion by the governmental unit." We observed in Texas Department of Aging and Disability Services v. Cannon that this requirement effectively makes a plaintiff's apparent nonchoice an election to sue only the government.[41] Thus, when defendants filed their original motion to dismiss, they were entitled to dismissal of the tort claims Rios asserted against both them and the Center, which were all the tort claims pleaded.
After defendants filed their motion to dismiss, Rios amended his petition to nonsuit the tort claims against the Center, asserting them against the Doctors only. We held in Cannon that an employee's right under section 101.106(e) to "immediately be dismissed" could not be effectuated without an order by the court, and before such an order issued, a plaintiff was not precluded from nonsuiting the tort claims to be dismissed and adding a claim not "under the Act"-in that case a federal civil-rights claim.[42] The plaintiff in Cannon had not amended her pleadings to "omit claims against the government in an attempt to preserve tort claims against employees that would otherwise be subject to dismissal."[43] And she could not have done so under our holding in Austin State Hospital v. Graham that a plaintiff's nonsuit following a motion to dismiss does not operate to deny the movant a ruling on its motion,[44] a holding Cannon reaffirmed.[45] Thus, following Rios' amended petition, defendants remained entitled to dismissal of the tort claims asserted against the Doctors in his original petition, as requested in defendants' original motion to dismiss.
C
But Rios argues, parroting the concurring opinion in the court of appeals, that when the Doctors filed an amended motion to dismiss, their original motion "ceased to *538 exist"; at that point, Rios' only tort claims were those in his amended petition, which were no longer asserted against the Center and thus not subject to dismissal under section 101.106(e).[46] By amending their motion to dismiss, Rios argues, defendants lost their right to argue for dismissal of the tort claims originally asserted against them and the Center.
Rios' argument is based on Rule 65 of the Texas Rules of Civil Procedure, which provides that when an "instrument" is amended, "the instrument for which it is substituted shall no longer be regarded as a part of the pleading in the record of the cause".[47] Assuming that the rule applies to motions, an issue we need not decide,[48] it does not affect the right to dismissal under section 101.106(e) for two reasons.
First, it is the filing of a motion to dismiss, not its content, that triggers the right to dismissal. Section 101.106(e) provides that "the employees shall immediately be dismissed on the filing of a motion by the governmental unit." Rule 65 's instruction that an instrument, after it has been amended, is no longer regarded as part of the pleadings does not nullify the fact that it was filed. Amendments do not always avoid the consequences of filing. For example, filing a fictitious pleading is sanctionable under Rule 13.[49] The rule once allowed sanctions to be avoided by amending the offensive pleading, but the rule was amended to remove that possibility.[50] Sanctions cannot be avoided merely by amending pleadings.[51]
Second, "when a rule of procedure conflicts with a statute, the statute prevails".[52] Rios argues that it would be inconsistent with Texas' liberal pleading rules not to construe Rule 65 to cause an amended motion to dismiss to nullify a prior motion. Whether that is true, section 101.106(e) is plain. Rule 65 has been in effect since 1941.[53] If Rule 65 is inconsistent with section 101.106(e), enacted in 2003, the statute must prevail.
IV
Rios made an irrevocable election to pursue a vicarious-liability theory against the Center by alleging in his original petition state-law tort claims against both the Center and the Doctors that were premised on the Doctors' being Center employees. Defendants' motion to dismiss the Doctors under subsection (e) of the Act's election-of-remedies provision confirmed the Doctors' status as employees and accrued their right to dismissal from the lawsuit. Rios could not avoid this result by amending his petition to drop the tort claims against the Center; nor did defendants'
*539 amended motion to dismiss vitiate its already-triggered statutory right to dismissal of the Doctors. The statute's plain text mandates these conclusions.
Accordingly, we reverse the judgment of the court of appeals, render judgment dismissing Rios' state-law tort claims against the Doctors, and remand the case to the trial court for further proceedings.

Tex. Civ. Prac. & Rem. Code § 101.106. All statutory references are to the Civil Practice and Remedies Code unless otherwise noted.

Mission Consol. Sch. Dist. v. Garcia, 253 S.W.3d 653, 657 (Tex. 2008).

507 S.W.3d 312 (Tex. App.-Houston [1st Dist.] 2016).

The Center is part of the University of Texas System. Tex. Educ. Code § 65.02(a)(9). State universities are state agencies and share the State's immunity. Lowe v. Tex. Tech Univ., 540 S.W.2d 297, 298 (Tex. 1976).

§ 101.106(e).

See Garcia, 253 S.W.3d at 659 ("Because the Tort Claims Act is the only, albeit limited, avenue for common-law recovery against the government, all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the Tort Claims Act]' for purposes of section 101.106." (alteration in original)).

§ 101.106(e). The amended petition also added a claim against the Doctors under section 1983 of the federal Civil Rights Act. 42 U.S.C. § 1983. The defendants do not contend that that claim should be dismissed. See Tex. Dep't of Aging & Disability Servs. v. Cannon, 453 S.W.3d 411, 416 (Tex. 2015) ("[S]ection 1983 claims ... assert[ed] against ... [governmental] [e]mployees ... are not brought under the Tort Claims Act.").

And, Rios argued, section 101.106(f) does not apply because it provides for dismissal of tort claims against governmental employees only when acting within the scope of employment.

Defendants took an interlocutory appeal under section 51.014(a)(8). Rios did not appeal and does not challenge the dismissal of his contract claim against the Center.

See 507 S.W.3d 312, 316 (Tex. App.-Houston [1st Dist.] 2016).

See id. at 319 (Radack, C.J., concurring); see also Austin State Hosp. v. Graham , 347 S.W.3d 298, 301 (Tex. 2011) (per curiam) ("A nonsuit cannot 'prejudice the right of an adverse party to be heard on a pending claim for affirmative relief.' " (quoting Tex. R. Civ. P. 162 )).

507 S.W.3d at 319 (Radack, C.J., concurring) (reasoning that under Texas Rule of Civil Procedure 65, defendants' amended motion to dismiss "canceled and replaced" their original motion).

See id. at 319-320.

See id. at 323-326 (Keyes, J., dissenting).

See id. at 328.

60 Tex. Sup. Ct. J. 1352 (June 23, 2017).

517 S.W.3d 748 (Tex. 2017).

See § 101.021(1) (stating that "[a] governmental unit in the state is liable for ... property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment" if certain conditions are met).

See § 101.001(2) (defining "[e]mployee" to mean "a person ... in the paid service of a governmental unit by competent authority, but ... not ... an independent contractor").

See Houston First Am. Savs. v. Musick, 650 S.W.2d 764, 767 (Tex. 1983) ("Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions.").

See Gevinson v. Manhattan Constr. Co., 449 S.W.2d 458, 466 (Tex. 1969) ("The vital feature of a judicial admission is its conclusiveness on the party making it. It not only relieves his adversary from making proof of the fact admitted but also bars the party himself from disputing it.").

§ 104.004(a).

Tex. Adjutant Gen.'s Office v. Ngakoue, 408 S.W.3d 350, 358 (Tex. 2013).

See Laverie v. Wetherbe, 517 S.W.3d 748, 750 (Tex. 2017).

Id. at 751.

§ 101.106(f).

See Laverie, 517 S.W.3d at 751.

Id.

Id. at 756.

Id. at 753.

Mission Consol. Indep. Sch. Dist. v. Garcia, 253 S.W.3d 653, 655 (Tex. 2008) ; see also §§ 101.021, 101.023.

See Act of May 22, 1969, 61st Leg., R.S., ch. 292, § 12(a), 1969 Tex. Gen. Laws 874, 877 (codified at Tex. Rev. Civ. Stat. art. 6252-19, § 12(a) ("The judgment or settlement in an action or claim under this Act shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of a unit of government whose act or omission gave rise to the claim."), recodified as § 101.106 by Act of May 17, 1985, 69th Leg., R.S., ch. 959, § 1, 1985 Tex. Gen. Laws 3242, 3305.

See Newman v. Obersteller, 960 S.W.2d 621, 622-623 (Tex. 1997) (holding that the original version of § 101.106(e) conferred immunity on governmental officials when a case against a governmental unit arising out of the same facts had proceeded to judgment).

Garcia, 253 S.W.3d at 656.

Id. at 657 ; see Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 11.05, 2003 Tex. Gen. Laws 847, 886 (current version of § 101.106 ).

Garcia, 253 S.W.3d at 657 (emphasis added).

Id. (emphasis added).

Id.

Id.

Tex. Adjutant Gen.'s Office v. Ngakoue, 408 S.W.3d 350, 355 (Tex. 2013).

See 453 S.W.3d 411, 417 (Tex. 2015) ("Cannon does not dispute that, by asserting common-law tort claims against both the Department and the Employees, she made an irrevocable election under subsection (e) to pursue those claims against the government only".).

See itation case-ids="6889030" index="37" url="https://cite.case.law/sw3d/453/411/#p416">id. at 416-418.

Id. at 417.

347 S.W.3d 298, 301 (Tex. 2011) (per curiam) (holding that Texas Rule of Civil Procedure 162 prevented the plaintiff from circumventing the doctor-defendants' right to dismissal under section 101.106(e) by nonsuiting the hospital after the doctors had filed a motion to dismiss).

See Cannon, 453 S.W.3d at 417.

See 507 S.W.3d 312, 319-320 (Tex. App.-Houston [1st Dist.] 2016) (Radack, C.J., concurring).

Tex. R. Civ. P. 65.

Rules 62-67 address amendments to pleadings. None refers to motions. Rule 64 refers to "instruments of pleading", listing examples, and Rule 65 also refers to the things substituted and replaced as "instrument[s]", though also referring to the replaced instrument as "the superseded pleading".

Tex. R. Civ. P. 13.

Tex. R. Civ. P. 13, 50 Tex. B.J. 850 (Tex. 1987, amended 1990 by Miscellaneous Docket No. 04-24-1990).

Mann v. Kendall Home Builders Constr. Partners I, Ltd., 464 S.W.3d 84, 91 (Tex. App.-Houston [14th Dist.] 2015, no pet.).

Johnstone v. State, 22 S.W.3d 408, 409 (Tex. 2000) (per curiam). An exception is when "the rule has been passed subsequent to the statute and repeals the statute as provided by Texas Government Code section 22.004." Id.

Miscellaneous Docket No. 10-29-1940.