

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| TRAVIS M. DEHORNEY, TDCJ No. 2027434, | § | No. 08-19-00066-CV |
| | § | Appeal from the |
| Appellant, | | |
| | § | 83rd District Court of |
| v. | | |
| | § | Pecos County, Texas |
| SHERI TALLEY, M.D., SAMUEL B. ITIE, and M. FUENTES, | | |
| | | (TC# P-7872-83-CV) |
| Appellees. | | |

## O P I N I O N

Travis M. DeHorney, appearing *pro se*, appeals the dismissal of his lawsuit against Appellees Sheri Talley, M.D., Samuel B. Itie, and M. Fuentes pursuant to chapter 14 of the Texas Civil Practice and Remedies Code. We affirm in part and reverse and remand in part.

## I. BACKGROUND

### A. DeHorney's factual allegations

DeHorney is an inmate at the Lynaugh Unit of the Texas Department of Criminal Justice in Fort Stockton, Texas. In April 2018, he filed suit against Dr. Talley, Itie, and Fuentes, who provided medical services to Lynaugh Unit inmates in conjunction with Texas Tech University

Health Sciences Center. As explained below, legal principles governing our review require that we take as true the facts alleged in DeHorney's petition. *See Camacho v. Rosales*, 511 S.W.3d 82, 86 (Tex. App.—El Paso 2014, no pet.). For that reason, the following facts are as stated in that petition.

DeHorney suffered an injury to his jaw as the result of an altercation with another inmate on October 24, 2017. He was promptly examined in the prison infirmary by Kristi Meier, a licensed vocational nurse. Meier referred DeHorney to Texas Tech Correctional Managed Care for the following day. DeHorney was seen there by Itie, a nurse practitioner, who diagnosed "localized swelling, mass and lump of skin, and subcutaneous tissue damage." Itie provided DeHorney with ice packs and pain pills to manage his discomfort. DeHorney continued to experience swelling and jaw pain and, on October 30, Itie ordered an x-ray.

On November 2, 2017, DeHorney saw the unit dental provider, who suspected that he had suffered a broken jaw. This suspicion arose because of DeHorney's continued pain, inability to bite down, and misaligned teeth (which had resulted in one broken tooth). On November 8, x-rays revealed that DeHorney had suffered a fracture of his left jaw. DeHorney was again sent to Itie, who did not refer DeHorney to an orthopedic specialist but instead advised him that his jaw would heal itself.

On December 7, 2017, DeHorney's medical file reached Dr. Talley, who gave DeHorney a "slow eating pass." DeHorney then initiated an administrative complaint, after which he was personally examined by Dr. Talley. The doctor referred DeHorney to an orthopedic specialist, who advised that DeHorney would have to undergo invasive surgery because of the delay in treating his fractured jaw.

DeHorney filed suit in April 2018.

## B. DeHorney's claims

DeHorney first asserts claims for medical malpractice against Dr. Talley and Itie. He alleges that they breached the standard of care by failing to timely diagnose his broken jaw and by failing to order any diagnostic tests on or near October 25, 2017 (the date on which he was first seen by Itie). DeHorney further alleges that, after x-rays revealed the fracture, Itie deprived him of proper medical care by failing to refer him to an orthopedic specialist. He similarly alleges that Dr. Talley failed to take appropriate steps to have him promptly seen by a medical specialist to treat the fracture.

DeHorney's second claim is entitled "failure to provide adequate medical care" and is asserted against Dr. Talley and Fuentes, who he states is "a Texas Tech Medical Branch employee who acts as office manager . . . ." DeHorney alleges that Dr. Talley and Fuentes failed to have an adequate system in place to diagnose his injury and failed to provide adequately trained staff. He specifically alleges that, at the time of his injury, they failed to provide an employee who could operate the available x-ray machine and failed to transport him to a hospital to have x-rays taken. The parties characterize this claim as one for "deliberate indifference to a serious medical need."

DeHorney's final two claims allege intentional infliction of emotional distress and negligent infliction of emotional distress, both based on delay in diagnosing the jaw fracture and providing proper medical care.

## C. Appellees' motion to dismiss

Appellees filed a motion to dismiss DeHorney's lawsuit pursuant to chapter 14 of the Texas Civil Practice and Remedies Code ("Chapter 14"). In that motion, Appellees contend that DeHorney's medical malpractice and intentional infliction of emotional distress claims are frivolous because they are barred by sovereign immunity. They contend that the claim for negligent

infliction of emotional distress is frivolous because Texas does not recognize that cause of action. And they contend that DeHorney's claim for deliberate indifference to a serious medical need is frivolous because the conduct he alleges does not rise to the level of deliberate indifference. Appellees additionally sought dismissal based on DeHorney's failure to comply with the procedural prerequisite of attaching a certified copy of his trust account statement to his petition. DeHorney subsequently filed the required trust account statement and a response to the motion to dismiss.

The trial court heard Appellees' motion to dismiss by submission on January 10, 2019. On that same day, the court signed a final judgment dismissing the lawsuit as frivolous and for failure to comply with Chapter 14.

## II. ISSUE

While DeHorney does not articulate a specific issue on appeal, it is apparent that he is asserting that the trial court erred by dismissing his lawsuit.

## III. STANDARD OF REVIEW

A Chapter 14 dismissal is ordinarily reviewed for abuse of discretion. *Camacho*, 511 S.W.3d at 85. But when, as here, the court dismisses a claim as frivolous without conducting a fact hearing, our review is limited to whether the claim lacks an arguable basis in law. *Id.* at 86. This presents a legal question that we review *de novo*. *Id.*

## IV. DISCUSSION

### A. Dismissal under Chapter 14

Chapter 14 of the Texas Civil Practice and Remedies Code governs litigation brought by an inmate who files an affidavit or unsworn declaration of inability to pay costs. TEX. CIV. PRAC. & REM. CODE ANN. § 14.002(a). Because DeHorney filed such an affidavit, his lawsuit is subject

4

to Chapter 14.

Section 14.003 of Chapter 14 provides that a court may dismiss a claim if it finds that the claim is frivolous or malicious. TEX. CIV. PRAC. & REM. CODE ANN. § 14.003(a)(2). In making that determination, the court may consider whether the claim has no arguable basis in law or in fact. *Id.* at § 14.003(b)(2). "A claim has no arguable basis in law only if it is based on (1) wholly incredible or irrational factual allegations; or (2) an indisputably meritless legal theory." *Camacho*, 511 S.W.3d at 86. In making this assessment, we take the inmate's allegations as true and review his *pro se* pleadings "by standards less stringent than those applied to formal pleadings drafted by lawyers . . . ." *Id.*

Appellees moved to dismiss DeHorney's claims as frivolous under Chapter 14 and the trial court's judgment specifies that dismissal is granted under that chapter. Even so, both in the trial court and on appeal, the parties engage in an extended discussion of section 101.106(f) of the Texas Tort Claims Act ("TTCA"), which provides a separate vehicle for dismissal of claims under that Act. For this reason, we also address section 101.106(f) and its impact on this case.

**B. Dismissal under TTCA section 101.106(f)**

**1. Scope of section 101.106(f)**

Tort claims against a governmental entity, or an employee of such an entity, are governed by the TTCA. That statute provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only. On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). The supreme court has recognized that, by adopting this section, "the Legislature has effectively mandated that only a governmental unit can

be sued for a governmental employee's work-related tortious conduct." *Garza v. Harrison*, 574 S.W.3d 389, 393–94 (Tex. 2019).

Section 101.106(f) encompasses three elements. The suit must (1) be filed against an employee of a governmental unit; (2) be based on conduct within the general scope of that employment; and (3) be one that could have been brought "under this chapter" against the governmental unit. TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f).

Concerning the first element, the TTCA defines "employee" as "a person . . . in the paid service of a governmental unit . . . [but not] an independent contractor . . . or a person who performs tasks the details of which the governmental unit does not have the legal right to control." *Franka v. Velasquez*, 332 S.W.3d 367, 372 (Tex. 2011) (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(2)). The fact that a medical provider must exercise some independent medical judgment does not preclude that provider from being an "employee" under this definition. *Murk v. Scheele*, 120 S.W.3d 865, 867 (Tex. 2003). Status as an employee of a governmental unit presents a threshold issue. *Franka*, 332 S.W.3d at 372.

As applied to the second element, "scope of employment" means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(5). The relevant inquiry is "whether the employee was doing his job, not the quality of the job performance." *Garza*, 574 S.W.3d at 394; *see Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 849 (Tex. 2018) ("Negligence, if proven, does not destroy the protection of section 101.106 for an employee acting within the scope of her employment."). "Even if work is performed wrongly or negligently, the inquiry is satisfied if, when viewed objectively, a connection [exists] between the employee's job duties and the alleged

6

tortious conduct." *Garza*, 574 S.W.3d at 394 (internal quotation marks omitted).

As to the third section 101.106(f) element, "all tort theories alleged against a governmental unit, whether it is sued alone or together with its employees, are assumed to be 'under [the TTCA]' for purposes of section 101.106." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008). In addition, "any tort claim against the government is brought 'under' the [TTCA] for purposes of section 101.106, even if the [TTCA] does not waive immunity." *Franka*, 332 S.W.3d at 375. Thus, even a tort claim for which the government retains immunity is one that "could have been brought under" the TTCA against the governmental unit. *See id.* at 385.

If each of these elements is established, then DeHorney's claims against Appellees are considered to be against them in their official capacities only. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f). In addition, Appellees would be entitled to dismissal of those claims without addressing whether the governmental unit's immunity has been waived. *See Franka*, 332 S.W.3d at 375, 385. However, while Appellees discuss section 101.106(f) in their motion to dismiss, they ultimately did not seek dismissal based on that statute. Rather, Appellees specifically sought dismissal under Chapter 14 based on their assertion that DeHorney's claims are frivolous, *i.e.*, lacking an arguable basis in law. Further, the trial court expressly recited in its judgment that DeHorney's claims are dismissed as frivolous and for failure to comply with Chapter 14.[1] Our review is therefore limited to whether DeHorney's claims lack any arguable basis in law. *See Camacho*, 511 S.W.3d at 85 n.4 ("[W]here a trial court dismisses a suit under Chapter 14 of the Civil Practice and Remedies Code and states its reasons in its order, this Court is limited to reviewing only its stated reasons.").

Because DeHorney's claims were dismissed pursuant to Chapter 14, we consider the

---

[1] Both parties appear to acknowledge that the trial court's judgment cannot be upheld based on a failure to comply with Chapter 14's trust account statement requirement because DeHorney cured that defect.

import of section 101.106(f) in this case to be in determining whether Appellees were sued in their official capacities such that they are entitled to the protection of sovereign immunity.

## 2. Application of section 101.106(f) to this case

### a. Appellees' status as employees

DeHorney alleges in his petition that Appellees are "employed as part of the Texas Tech Medical Branch who has contracted to provide medical care to the Texas Department of Criminal Justice . . . ." He more specifically alleges that Itie is employed by Texas Tech Correctional Managed Care, Dr. Talley is the Southern Regional Medical Director for Texas Tech, and Fuentes is "a Texas Tech Medical Branch employee who acts as office manager . . . ."

Appellees generally allege in their answer that they are "public officials employed by the State of Texas." In their motion to dismiss, they allege that they are "employees of a governmental agency" and acted within the scope of their employment with Texas Tech University Health Sciences Center.

Texas Tech University Health Sciences Center ("TTUHSC") is a governmental entity. *Gonzalez v. El Paso Hosp. Dist.*, 940 S.W.2d 793, 794 (Tex. App.—El Paso 1997, no writ). DeHorney does not contest that TTUHSC is the entity for which Appellees worked, or that it is a governmental entity. Rather, he asserts, both in his response to the motion to dismiss and on appeal, only that "Defendants have not shown that are in fact employees of a governmental unit. Defendants have produced no evidence of their status, whether they are subcontractors, or working under an agreement." But Appellees were not required to produce any such evidence because of the allegations contained in DeHorney's own pleadings.

The supreme court's opinion in *University of Texas Health Science Center at Houston v. Rios*, 542 S.W.3d 530 (Tex. 2017), is instructive. The plaintiff in that case asserted contract and

8

tort claims against the Center, and also asserted tort claims against a number of faculty doctors. The Attorney General moved to dismiss the contract claims against the Center and the tort claims against the doctors, alleging in the motion to dismiss that the doctors were all employees of the Center. *Id.* at 532-33. The plaintiff amended his petition to drop his tort claims against the Center. The doctors then amended their motion to dismiss but reiterated that they were all Center employees. *Id.* at 533. In his response to the amended motion, the plaintiff stated that "he did not even know whether the Doctors were in fact Center employees, suggesting they might be independent contractors." *Id.*

The supreme court determined that the plaintiff's allegations in his original petition that the Center acted through the doctors was a judicial admission that they were employees of the Center. It further determined that this admission relieved the doctors of having to prove their status as employees. *Id.* at 534. The plaintiff conceded in oral argument that he had assumed in his original petition that the doctors were employees, based on his knowledge at the time. He did not argue that this knowledge ever changed, only that he became less certain that the doctors were employees. *Id.* at 534-35.

In addition to the plaintiff's judicial admission and concession, the supreme court noted that "[t]he status of the Doctors as Center employees is also borne out by defendants' pleadings." *Id.* at 535. The Attorney General represented the doctors, "as he is statutorily required to do in certain actions against public servants," and, in the motion to dismiss, stated that the doctors were all employees of the Center who were acting within the scope of their employment. *Id.* Thus, "at the time the defendants filed their original motion to dismiss, all parties' pleadings established that the Doctors were Center employees." *Id.*

As in *Rios*, the pleadings in our case relieved Appellees of having to produce evidence

9

proving their status as employees. DeHorney affirmatively alleges in his petition that Appellees are governmental employees. For example, he states that all Appellees are employed by Texas Tech Medical Branch, Dr. Talley is the Southern Regional Medical Director for Texas Tech, Itie is employed by Texas Tech Medical, and Fuentes is a Texas Tech Medical Branch employee who acts as office manager.

In addition, as in *Rios*, Appellees are represented by the Attorney General, who states in Appellees' original answer that they are "public officials employed by the State of Texas[,]" and similarly states in the motion to dismiss that Appellees are "employees of a governmental agency." The motion also more specifically states that "Itie and Talley are medical professionals employed by Texas Tech University Health Sciences Center," "Fuentes is an office manager employed by Texas Tech University Health Sciences Center," and each defendant was acting in the scope of that employment.

Also as in *Rios*, DeHorney never contends that Appellees are *not* employees, only that they did not produce evidence of that fact. He, like the plaintiff in *Rios*, merely suggests that perhaps they are contractors. *See id.* at 533.

Finally, as in *Rios*, at the time Appellees filed their motion to dismiss, all parties' pleadings established that they were employees of a governmental entity. *See id.* at 535. We conclude that Appellees satisfied the first element required for application of section 101.106(f). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f) ("suit is filed against an employee of a governmental unit").

### b. Acting in the scope of employment

The second required element under section 101.106(f) is that the suit is "based on conduct within the general scope of [the] employee's employment . . . ." *Id.* This element is also established

by DeHorney's own pleadings.

The supreme court in *Rios* noted that the connection between the defendant doctors' job duties and the allegedly tortious conduct, "as claimed by Rios himself," placed that conduct "squarely within the scope of their employment at the Center." *Rios*, 542 S.W.3d at 536. The same is true in this case.

DeHorney affirmatively alleges that each Appellee engaged in the conduct underlying his claims in the context of performing his or her job—Dr. Talley as "Southern Regional Medical Director for Texas Tech," Itie as a nurse practitioner with Texas Tech Correctional Managed Care, and Fuentes as a "Texas Tech Medical Branch" officer manager. While DeHorney alleges that Appellees were negligent in the performance of these job duties, any such negligence does not remove their conduct from the scope of employment. The issue is "whether the employee was doing his job, not the quality of the job performance." *Garza*, 574 S.W.3d at 394; *see Rodriguez*, 547 S.W.3d at 849.

DeHorney's own pleadings demonstrate that his suit against Appellees is based on conduct within the general scope of their employment. *See Rios*, 542 S.W.3d at 535. The second element required for application of section 101.106(f) is satisfied. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f).

### c. Nature of claims brought under the TTCA

DeHorney's claims for medical malpractice, intentional infliction of emotional distress, and negligent infliction of emotional distress are tort claims. Consequently, they are claims "brought under" the TTCA, regardless of whether immunity is waived for those claims. *See Garcia*, 253 S.W.3d at 659 (tort theories are "under" the TTCA); *Franka*, 332 S.W.3d at 385 (claims are "brought under" the TTCA even if immunity is retained). Section 101.106(f)'s third

11

element is satisfied.

### C. Dismissal under Chapter 14

#### 1. Dismissal of the tort claims based on sovereign immunity

We have determined above that DeHorney's tort claims against Appellees fall within the scope of section 101.106(f). But, again, those claims were dismissed pursuant to Chapter 14, not section 101.106(f). That section is implicated, however, in Appellees' contention in their motion to dismiss that DeHorney's tort claims are frivolous because they are barred by sovereign immunity.

##### a. Official capacity

With the exception of *ultra vires* suits, "an employee sued in his official capacity has the same governmental immunity, derivatively, as his government employer. " *Franka*, 332 S.W.3d at 382–83. For this reason, if Appellees were sued in their official capacities, they are entitled to sovereign immunity.

DeHorney argues that he sued Appellees in their individual capacities. He cites language from the supreme court's opinion in *Franka* stating that public employees are individually liable for their own torts, even when committed in the course of their employment, may be sued in their individual capacities, and may assert official immunity, but that "official immunity does not protect a physician sued in his individual capacity from liability for medical decisions and actions." *Id.* at 383-84. However, these statements were made in the context of the court's discussion of the manner in which section 101.106(f) changed the law to provide increased protection to public employees.

The court specifically stated that its interpretation of section 101.106(f) "foreclose[s] suit against a government employee in his individual capacity if he was acting within the scope of

employment" and "changes, among other things, the rule . . . which has allowed malpractice suits against physicians employed by the government, even though acting within the scope of employment." *Id.* at 381. The court also noted that the federal Westfall Act "provided immunity to all employees acting within the scope of employment," and that the "revision of section 101.106 achieves the same end under Texas law as the Westfall Act does under federal law." *Id.* at 384-85.

Under section 101.106(f), as interpreted by the supreme court in *Franka*, Appellees are considered to have been sued only in their official capacities because they are employees of a governmental unit, DeHorney's claims are based on conduct within the general scope of that employment, and his tort claims could have been brought under the TTCA against the governmental unit. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.106(f); *Franka*, 332 S.W.3d at 381-85. It follows, then, that Appellees are entitled to the protection of sovereign immunity if their governmental employer would be entitled to such protection. *See Franka*, 332 S.W.3d at 382-83.

### b. Waiver of immunity under the TTCA

The TTCA contains a narrow waiver of governmental immunity, providing that a governmental unit is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

    (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

    (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE ANN. § 101.021.

DeHorney's claims clearly do not arise from the operation or use of a motor-driven vehicle.

In addition, DeHorney himself asserts that his "allegations are not allegations concerning the condition or use of tangible property which would give rise to governmental liability under section 101.021 . . . ."[2] DeHorney asserts that Appellees failed to use medical equipment to appropriately diagnose his condition, which might indicate an effort to invoke section 101.021(2), but he then concludes, "thus [he] did *not* state a cause of action under the T.T.C.A. . . . ." (Emphasis added.)

Even independently of DeHorney's concessions, the allegations in his petition do not encompass a claim caused by a condition or use of tangible personal property. At most, DeHorney alleges the non-use of property, which will not support a claim under the TTCA. *See Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996) ("This Court has never held that mere non-use of property can support a claim under the Texas Tort Claims Act."). In addition, none of his stated complaints fall within the "use of tangible personal property" waiver of immunity. *See Univ. of Texas M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 880–81 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (no waiver of immunity under "tangible personal property" provision for "negligent (1) exercise of medical judgment, (2) use or misuse of information, (3) failure to act or to use property, (4) failure to supervise, (5) failure to investigate . . . .").

We further note that immunity is retained for DeHorney's claim for intentional infliction of emotional distress because the TTCA "does not waive immunity for intentional torts . . . ." *Franka*, 332 S.W.3d at 376; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 ("This chapter does not apply to a claim . . . arising out of . . . [an] other intentional tort . . . ."); *Univ. of Texas Med. Branch at Galveston v. Hohman*, 6 S.W.3d 767, 777 (Tex. App.—Houston [1st Dist.] 1999, pet. dism'd w.o.j.) (employees sued in their official capacities cannot be held liable for intentional

---

[2] DeHorney makes this assertion in the mistaken belief that waiver of governmental immunity is necessary to show that a claim could have been brought under the TTCA against the governmental unit. *But see Franka*, 332 S.W.3d at 375, 385 (tort claim is "brought under" TTCA even if immunity is not waived).

14

torts).

Finally, the TTCA does not include a waiver of immunity for claims for negligent infliction of emotional distress because no such cause of action is recognized under Texas law. *See Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993); *Boyles v. Kerr*, 855 S.W.2d 593, 594 (Tex. 1993).

Because the TTCA does not contain a waiver of immunity applicable to any of DeHorney's tort claims, Appellees' governmental employer would be entitled to sovereign immunity. And because Appellees were sued only in their official capacities, they are entitled to the protection of that immunity as a legal bar to those claims. Consequently, DeHorney's tort claims are based on an indisputably meritless legal theory and lack any arguable basis in law. *See Camacho*, 511 S.W.3d at 86; TEX. CIV. PRAC. & REM. CODE ANN. § 14.003. The trial court did not err by dismissing those claims as frivolous.

### 2. Dismissal of the claim for deliberate indifference to a serious medical need

DeHorney's remaining claim is for deliberate indifference to a serious medical need, which is proscribed by the Eighth Amendment's prohibition against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference" in this context requires that an inmate show that the defendant subjectively knew of a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837, 847 (1994). In other words, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. The inmate must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Johnson v. Treen*, 759 F.2d 1236,

1238 (5th Cir. 1985)).

The foundation of DeHorney's complaints is his contention that Appellees failed to promptly diagnose his broken jaw and refer him to an orthopedic specialist for treatment. He asserts that the delay in obtaining a proper diagnosis and treatment caused him to have to undergo invasive surgery that would otherwise have been avoided. DeHorney thus alleges that he suffered serious harm. *See Farmer*, 511 U.S. at 837.

While DeHorney was first seen by a licensed practical nurse the day after the fight in which he was injured, and then followed by a nurse practitioner shortly thereafter, DeHorney more specifically alleges that, "the Defendants breached the standard of care when they failed to timely diagnose the broken mandible bone in the jaw and failed to order any diagnostic testing at the time of or near the examination on October 25, 2017."

Evaluating DeHorney's symptoms and assessing the severity of his condition as manifested at that time are matters of medical judgment that raise only issues of negligence insufficient to state an Eighth Amendment claim. *See Gamble*, 429 U.S. at 107. But DeHorney further alleges that he was not seen by a dentist until more than a week had passed since the injury and, after the dentist suspected a broken jaw, he did not receive x-rays for almost another week. Then, once the x-rays revealed that DeHorney's jaw was, indeed, broken, Appellees still failed to refer him to an orthopedic specialist for affirmative treatment. Rather, they continued the "wait and it will heal" approach they had adopted from the start.

Only after DeHorney filed an administrative appeal was he personally examined by Dr. Talley after a prolonged delay. DeHorney further alleges that the orthopedic specialist to whom he was eventually referred advised him that—due to the defendants' prolonged failure to accurately diagnose and provide appropriate treatment—he would thereafter be subjected to an invasive

16

surgical procedure that would not have had to occur but for the delay in providing adequate medical care.

We cannot conclude that DeHorney's factual allegations, taken as true, would not support an inference that Appellees "ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. Rather, we conclude that DeHorney has adequately stated an Eighth Amendment claim for deliberate indifference to a serious medical need. Because his claim does *not* lack an arguable basis in law, the trial court erred by dismissing it as frivolous. *See* Tex. Civ. Prac. & Rem. Code Ann. § 14.003.

## V. CONCLUSION

The judgment of the trial court is affirmed insofar as it dismisses DeHorney's state law claims pursuant to Chapter 14 of the Texas Civil Practice and Remedies Code. The judgment is reversed insofar as it dismisses DeHorney's Eighth Amendment claim. That claim is remanded to the trial court for further proceedings.


GINA M. PALAFOX, Justice

January 12, 2021

Before Rodriguez, C.J., Palafox, and Alley, JJ.

17