ACCEPTED
15-25-00004-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/31/2025 9:12 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-25-00004-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/31/2025 9:12:14 PM
CHRISTOPHER A. PRINE
Clerk

# In the Court of Appeals
# For the Fifteenth District of Texas

## Curadev Pharma Pvt. Ltd. and Curadev Pharma Limited,

*Plaintiffs-Appellants,*

v.

## The University of Texas Southwestern Medical Center, Dr. Xiaochen Bai, and Dr. Xuewu Zhang,

*Defendants-Appellees.*

## Interlocutory Appeal from the 101st District Court of Dallas County
Trial Court No. DC-24-03875

## APPELLANTS' REPLY BRIEF

ALLEN OVERY SHEARMAN STERLING US LLP
David P. Whittlesey
Trey Hebert
300 W. 6th Street, Suite 2250
Austin, Texas 78701
(512) 647-1900 (phone)

Jacob Fields
2601 Olive Street, 17th Floor
Dallas, Texas 75201
(214) 271-5777 (phone)

**Attorneys for Curadev Pharma Pvt. Ltd. and Curadev Pharma Limited**
**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

I. Introduction ................................................................................. 1

II. Appellees Wrongly Claim Intellectual Property. ............................ 3

    A. Curadev had discovered distinct STING agonists different from traditional CDN site-targeting agonists. ...................... 3

    B. Takeda independently verified Curadev's finding before engaging UTSW. ................................................................. 5

    C. Takeda then directed Appellees to identify the allosteric binding site of Curadev's test compound. .............................. 8

    D. Appellees' work was not an "independent discovery." ............ 9

    E. Appellees broadcast their stolen lesson, further amplifying the harm to Curadev. ........................................................... 10

III. Curadev Has Adequately Pleaded a Takings Claim. .................... 12

    A. Curadev alleged intentional acts by the State Appellees. ... 12

        1. Appellees' proposed private-or-sovereign analysis is the wrong test for intent in takings claims. ................ 14

        2. *Self* confirms that the Amended Petition adequately alleges intent. ............................................................. 16

        3. *Brownlow* supports Curadev's takings claim with respect to intent. ......................................................... 17

    B. Curadev alleged that Appellees' intentional acts resulted in the taking, damaging, or destruction of Curadev's property. .............................................................................. 19

    C. Appellees acknowledge that the Supreme Court has recognized that intellectual property may be the subject of takings claim. ........................................................................ 21

IV. Curadev Has Adequately Pleaded that Appellees Waived Sovereign Immunity for the Non-Constitutional Claims. ............. 24

V. The Tort Claims Act Does Not "Mandate Dismissal" of the Professors. ...................................................................................... 27

    A.     The election-of-remedies provision does not apply to *ultra vires* claims. ............................................................................ 27

    B.     The Court should reject Appellees' invitation to ignore the amended petition. .............................................................. 31

VI. Curadev Has Adequately Pleaded an *Ultra Vires* Claim against the Professors. .......................................................................... 35

VII. Curadev Timely Objected to Improper Hearing in Front of the Associate Judge. ......................................................................... 40

VIII. Appellees' Other Miscellaneous Attacks Are Meritless. ................. 41

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Anderson v. City of Seven Points,*
806 S.W.2d 791 (Tex. 1991) ................................................................. 36

*Bell v. City of Grand Prairie,*
221 S.W.3d 317 (Tex.App.-Dallas 2007, no pet.) ................................. 40

*Bullock v. Calvert,*
480 S.W.2d 367 (Tex. 1972) ................................................................. 36

*City of Arlington v. Randall,*
301 S.W.3d 896 (Tex.App.–Fort Worth 2009, pet. denied) ................ 31

*City of El Paso v. Heinrich,*
284 S.W.3d 366 (Tex. 2009) ............................................. 35, 36, 37, 38

*City of Houston v. Houston Mun. Employees Pension Sys.,*
549 S.W.3d 566 (Tex. 2018) ................................................................. 30

*City of Houston v. Vallejo,*
371 S.W.3d 499 (Tex. App.—Houston [1st Dist.] 2012, pet.
denied) ................................................................................................. 35

*City of San Antonio v. Polanco & Co., L.L.C.,*
No. 04-07-00258-CV, 2007 WL 3171360 (Tex. App.—San
Antonio Oct. 31, 2007, pet. denied) ............................................... 13, 14

*Cobb v. Harrington,*
190 S.W.2d 709 (Tex. 1945) ................................................................. 35

*Dallas City Cmty. College Dist. v. Clear Channel Outdoor, Inc.,*
No. 05-07-00701-CV, 2008 WL 3307085 (Tex. App.—Dallas July
31, 2008, pet. denied) ...................................................................... 12, 13

*Fed. Sign v. Tex. S. Univ.,*
951 S.W.2d 401 (Tex. 1997) ..................................................... 25, 26, 30

*Franka v. Velasquez,*
332 S.W.3d 367 (Tex. 2011) ..............................................................29

*Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.,*
39 S.W.3d 591 (Tex. 2001) ........................................................... 12, 13

*Hall v. McRaven,*
508 S.W.3d 232 (Tex. 2017) ..............................................................37

*Hansen v. United States,*
65 Fed. Cl. 76 (2005) ........................................................................15

*Honors Acad., Inc. v. Tex. Educ. Agency,*
555 S.W.3d 54 (Tex. 2018) ................................................................39

*Houston Belt & Terminal Ry. Co. v. City of Houston,*
487 S.W.3d 154 (Tex. 2016) ..............................................................30

*Kilgore Indep. Sch. Dist. v. Axberg,*
535 S.W.3d 21 (Tex. App.—Texarkana 2017, no pet.).......................31

*Lazarides v. Farris,*
367 S.W.3d 788 (Tex. App.—Houston [14th Dist.] 2012, no pet.)......29

*Mission Consol. Indep. Sch. Dist. v. Garcia,*
253 S.W.3d 653 (Tex. 2008) .......................................................28, 29

*Molina v. Alvarado,*
463 S.W.3d 867 (Tex. 2015) ..............................................................29

*Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal Dist.,*
691 S.W.3d 890 (Tex. 2024) ..............................................................24

*Pidgeon v. Turner,*
625 S.W.3d 583 (Tex. App.—Houston [14th Dist.] 2021, no pet.)......37

*Sharyland Water Supply Corp. v. City of Alton,*
354 S.W.3d 407 (Tex. 2011) ..............................................................24

4

*Smith v. Lutz,*
149 S.W.3d 752 (Tex. App.—Austin 2004, no pet.) ............................ 12

*State v. Holland,*
221 S.W.3d 639 (Tex. 2007) ......................................................... 12, 13

*Tex. Dep't of Aging & Disability Servs. v. Cannon,*
453 S.W.3d 411 (Tex. 2015) ............................................ 29, 31, 33, 34

*Tex. Dep't of Parks & Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004) ................................................................ 39

*Tex. Dep't of Transp. v. Sefzik,*
355 S.W.3d 618 (Tex. 2011) ................................................................ 25

*Tex. Dep't of Transp. v. Self,*
690 S.W.3d 12 (Tex. 2024) ...................................... 12, 13, 15, 16, 17

*Tex. Natural Res. Conservation Comm'n v. IT–Davy,*
74 S.W.3d 849 (Tex. 2002) .................................................................. 24

*Tex. S. Univ. v. State St. Bank & Tr. Co.,*
212 S.W.3d 893 (Tex. App.—Houston [1st Dist.] 2007, pet.
denied) ................................................................................................ 27

*Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios,*
542 S.W.3d 530 (Tex. 2017) .................................................... 29, 32, 33

*Wichita Falls State Hosp. v. Taylor,*
106 S.W.3d 692 (Tex. 2003) ................................................................ 25

**Statutes**

Tex. Civ. Prac. & Rem. Code Ann. § 101.106 ........................................ 28

Tex. Educ. Code § 51.914 .......................................................... 26, 38, 39

**Other Authorities**

Tex. R. Civ. P. 91 .................................................................................. 19

Appellants Curadev Pharma Pvt. Ltd. and Curadev Pharma Limited ("Curadev" or "Appellants") file this Reply Brief and would respectfully show the Court as follows:

## I.     INTRODUCTION

Appellees present a revisionist view of what happened and what Curadev has alleged. As explained in Appellants' opening brief, the facts as pleaded are what matter—not Appellees' rendition of them. Despite their obfuscation, Appellees acknowledge Curadev's core operative allegations:

1.     Curadev developed a STING[1] agonist that binds to an allosteric transmembrane site of the STING protein. Appellees' Br. at 3.

2.     Curadev licensed that STING agonist to third-party Takeda. *Id.*

3.     To verify its binding properties, Takeda contracted The University of Texas Southwestern Medical Center ("UTSW") to conduct certain research on Curadev's STING agonist under the Sponsored Collaboration Research Agreement, (the "Research Agreement"). *Id.* at 4.

---

[1] "STING," and other scientific concepts referenced herein were explained in Curadev's Amended Petition (e.g., CR.543-544, 549) and Appellants' Br. (e.g., p. 1-3).

4. Pursuant to the Research Agreement, Takeda provided Curadev's STING agonist (the "test compound") to Appellees. *Id.*

5. Appellees performed the requested tests and confirmed that the test compound bound to a unique allosteric transmembrane site on STING. *Id.* at 6-7.

6. Appellees did not develop the test compound or independently decide to test its allosteric binding properties. *Id.*

7. After the Research Agreement was terminated, Takeda informed Appellees that Curadev invented the test compound. *Id.* at 7.

8. Curadev requested that Appellees delay publication on Curadev's test compound and later offered to discuss joint publication in July 2021. *Id.* at 8.

9. Meanwhile, Appellees identified one of Curadev's publicly disclosed compounds similar in structure ("C53"), and confirmed it had similar binding properties. *Id.* at 8.

10. Appellees then published these "findings" in *Nature* as their own, filed a patent application, and sought to commercialize them through a collaboration with Curadev's competitors. *See id.* at 8.

Those facts appear to be undisputed. Appellees characterize Curadev's claim as a "fruit of the poisonous tree" argument. *Id.* at 9. To the contrary, Appellees chopped down the tree that Curadev painstakingly grew. As public officials, Appellees unlawfully used, published, and misappropriated the proprietary fruits of Curadev's labor.

2

This constitutes a taking of Curadev's property under the Texas Constitution.

## II. APPELLEES WRONGLY CLAIM INTELLECTUAL PROPERTY.

In opposition, Appellees claim for the first time that the "Professors ma[de] their own discovery" (Appellees' Br. at 9) and UTSW, not Curadev, "was actually the title holder of the discovery." *Id.* at 33. Appellees baselessly assert that, contrary to Curadev's allegations, they made these findings "independently." (*See e.g.*, *id.* at 10, 20, 33, and 38). This newfound ownership claim is wrong, and an affront to the years of research and millions of dollars that Curadev invested into developing its intellectual property. Curadev's takings claim is based on Appellees' misuse and destruction of Curadev's trade secret property. Although Curadev's claim is not dependent on how Curadev developed such property, further explanation is warranted considering Appellees' galling assertion of independent development and ownership.

### A. Curadev had discovered distinct STING agonists different from traditional CDN site-targeting agonists.

Curadev started a program in 2016 to discover small molecule activators of the STING protein that were fully differentiated from the

3

natural ligands of the protein, i.e. cyclic dinucleotides (CDN) and their analogues. This complex drug discovery program delivered a series of compounds with novel chemical structures and properties compared to CDNs.

As explained in Curadev's Amended Petition, "From the inception of its STING agonist program, Curadev sought to identify traditional small molecule drugs differentiated from the typically large and polar CDNs through an extensive iterative research and testing program that took four years and cost approximately US$12.5 million." CR.544.

Identifying these development candidates is an immensely rigorous and resource-intensive endeavor, requiring the synthesis, screening, and evaluation of more than a thousand compounds. Each compound must undergo cellular screens to identify promising leads which are then meticulously evaluated across critical parameters, including cellular and molecular pharmacology, anti-cancer pharmacology, pharmacodynamics (how the drug interacts with biological systems), pharmacokinetics (how the drug is absorbed, distributed, metabolized, and excreted), and safety assessments to ensure its viability for further development. This process demands cutting-edge scientific expertise, extensive laboratory

4

experimentation, and countless hours of data analysis, with only a fraction of compounds ultimately meeting the stringent criteria required to advance to the next stage of development. There is documented risk in the drug discovery process that the multi-year effort to identify novel drug-like chemical structures will fail. Therefore, the security of its research effort was paramount for Curadev.

"Through this effort," stated the Amended Petition, "Curadev designed and developed several potent small molecule human STING agonists which were allosteric human STING agonists that likely bound to a unique site in what is known as the 'transmembrane region' of the STING protein." CR.544. At the time of this discovery, it wasn't publicly known in the field that STING agonists could bind to the transmembrane region. *Id*. Curadev's discovery was absolutely groundbreaking.

### B. Takeda independently verified Curadev's finding before engaging UTSW.

In May 2019, Curadev licensed Takeda to research and develop a STING agonist antibody-drug conjugate using Curadev's proprietary small molecule STING agonist as the key ingredient.

Takeda had independently reaffirmed the same finding that the test compound is a direct activator of the STING protein. The only remaining question concerned the exact binding site within the STING protein. Given the significant structural differences between Curadev's highly hydrophobic compounds and the hydrophilic CDN molecules, it was evident that Curadev's compounds were not expected to conventionally fit into the pocket occupied by highly hydrophilic CDN molecules but instead engaged STING at a different binding site (see illustration).



The above image depicts a STING protein, including the previously known binding site for most STING activators (upper blue oval), and the unique site in the transmembrane domain where Curadev's compound binds (lower blue oval). Identifying this site was expected to facilitate structural optimization, strengthen Curadev's intellectual property portfolio, and enhance its commercial opportunities.

### C. Takeda then directed Appellees to identify the allosteric binding site of Curadev's test compound.

Existing cellular, biochemical, and biophysical data already confirmed that Curadev's test compound functioned as a differentiated STING agonist. Data from Curadev and Takeda confirmed that Curadev's compound did not bind to the "usual" binding site on the STING protein, so Takeda surveyed their network of academic contacts/collaborators to identify a group that had access to a full-length structure of STING, as this would be the best means to identify the binding site. Appellees Bai and Zhang ("the Professors") had previously published a structure of full-length STING, which led Takeda to provide Curadev's compound to Appellees.

As already discussed extensively, this project was a paid exercise between Appellees and Takeda, where Appellees were directed to verify the binding site of the test compound. Their access to Curadev's STING agonist was contractually limited to specific research within the scope of a defined project for Takeda. As anticipated, Appellees confirmed that Curadev's compound interacted with and identified the unique STING binding site.

**D. Appellees' work was not an "independent discovery."**

It is difficult to overstate how little "independent" thought/analysis/invention this paid exercise required. Appellees could not have identified the transmembrane binding site without Curadev's compound. Curadev does not deny that Appellees studied the test compound after Takeda reached out to them—in fact they were paid and directed to do this work. But it is inconceivable that Appellees could have reached the same destination "independently."

Appellees' confirmation of the STING agonist's binding site—after Curadev had already identified and designed the compound for this very purpose—was not an independent scientific breakthrough but rather a predictable outcome based on Curadev's prior work. Their ability to confirm the compound's interaction with the transmembrane site in "less than a year" shows they were working within the framework already established by Curadev, rather than making a novel, independent discovery. *See* Appellees' Br. at 10.

One way to illustrate the above—the STING protein can be compared to a lock with multiple keyholes—some standard and others specialized. Traditional STING agonists act as conventional keys fitting

into standard keyholes, whereas Curadev's compounds function as specialized keys that unlock STING in a unique and more efficient manner. Appellees' research verified that Curadev's compounds fit into a distinct and different binding site—one of the special keyholes.

Without Curadev's foundational research, Appellees would not have known special keyholes existed, much less the shape and design of the key.

### E. Appellees broadcast their stolen lesson, further amplifying the harm to Curadev.

Recognizing that Appellees certainly were prohibited from publishing information about the specific key, Appellees desperately searched for a similar key. At bottom, whether publishing on Curadev's exact test compound or another with the same secretly valuable characteristics, Appellees destroyed Curadev's trade secret property.

Essentially, Appellees stole a fast-track course from Curadev—without consent and without just compensation. Before Curadev's work, no one even considered that STING agonists could bind to sites outside the traditional CDN pocket. Curadev invested substantial time, expertise, and resources in uncovering and validating this paradigm-

10

shifting discovery. Appellees short-circuited the scientific process using knowledge gained under confidentiality, bypassing the extensive research, trial, and error that would otherwise have been required to independently reach the same conclusions.

This misappropriation had direct and far-reaching consequences. As stated in the Amended Petition, among other harms suffered, "… competitors to Curadev were and are able to access the benefits of Curadev's proprietary information without having to absorb the substantial time and resource expenses that Curadev incurred in developing its technology." CR.561.

What was once a hard-earned, protected insight—that STING agonists could engage with transmembrane sites rather than just the conventional CDN pocket—has now been handed to the world on a silver platter, destroying both the secrecy of that insight and its substantial value. What should have remained a competitive advantage for Curadev has instead become a roadmap for competitors.

## III. CURADEV HAS ADEQUATELY PLEADED A TAKINGS CLAIM.

The elements of a takings claim are (1) an intentional act by the State; (2) that resulted in the taking, damaging, or destruction of a plaintiff's property; (3) for public use. Appellants' Br. at 9 citing *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 26 (Tex. 2024); Appellees' Br. at 17; citing *State v. Holland,* 221 S.W.3d 639, 643 (Tex. 2007).

### A. Curadev alleged intentional acts by the State Appellees.

Curadev alleged that Appellees intentionally performed acts that resulted in the destruction of Curadev's trade secret intellectual property. Appellees argue that because Appellees obtained Curadev's test compound under contract, the intent element is not satisfied. They cite to a spate of cases in which *the plaintiff* had knowingly entered into contracts with the State, for which sovereign immunity applied to enforcement of those contracts. Appellees' Br. at 21-22, citing *Gen. Servs. Comm'n v. Little-Tex Insulation Co., Inc.*, 39 S.W.3d 591, 599 (Tex. 2001); *Holland*, 221 S.W.3d at 644; *Smith v. Lutz*, 149 S.W.3d 752, 760 (Tex. App.—Austin 2004, no pet.); *Dallas City Cmty. College Dist. v. Clear Channel Outdoor, Inc.*, No. 05-07-00701-CV, 2008 WL 3307085, at *3

12

(Tex. App.—Dallas July 31, 2008, pet. denied); *City of San Antonio v. Polanco & Co., L.L.C.*, No. 04-07-00258-CV, 2007 WL 3171360, at *1 (Tex. App.—San Antonio Oct. 31, 2007, pet. denied).

But none of those cases applies here. Both *Little-Tex* and *Holland* involved a private party that directly or via controlled entity entered into an agreement with the State for a construction project. In *Little-Tex*, a payments dispute arose, and the contractor brought a breach-of-contract claim against the State and alternatively, a takings claim. In *Holland*, the plaintiff sought to increase payment for water treatment facilities provided under the contract based on subsequently issued patents. Curadev is not seeking to increase payment or enforce any other contractual term. Even if these decisions were once applicable, the recent *Self* decision rejecting this line of analysis effectively overturned any requirement to analyze the mindset of the state. *See Self*, 690 S.W.3d at 26.

*Clear Channel* involved a lease termination. Although the court ultimately found no taking based on the contractual rights, the case was not dismissed for lack of jurisdiction. In fact, it was a declaratory judgment action <u>brought by the State</u>. *Clear Channel Outdoor, Inc.*, 2008

13

WL 3307085, at *3. The court heard the dispute. Here, Appellees seek to dismiss the case for want of jurisdiction based on sovereign immunity before the trial court can even evaluate the evidence.

In *City of San Antonio v. Polanco & Co.,* the city terminated an agreement with the plaintiff related to concession stand operations at city-owned facilities based on alleged failure by the plaintiff to meet obligations. *Polanco & Co., L.L.C.*, 2007 WL 3171360, at *1. The plaintiff brought breach of contract claims, then added a takings claim in its second amendment. *Id.*

These cases cited by Appellees concerned plaintiffs that entered agreements with the government and then alleged breach of contract or sought to modify the payment due under the agreement. None involved situations where neither the plaintiff nor the State were aware of the other at the time of the contract under which the State exercised "colorable" rights.

### 1. Appellees' proposed private-or-sovereign analysis is the wrong test for intent in takings claims.

Appellees argue that the "appropriate inquiry is whether UT Southwestern was 'acting as any private party could, and not a

14

sovereign'" when evaluating intent. Appellees' Br. at 22. But Curadev need not allege, much less prove, that Appellees acted coercively, or with "specific" intent to "take" Curadev's property. *See, e.g.*, *Self*, 690 S.W.3d at 26; Appellees' Br. at 23. In *Self*, the State intentionally destroyed certain privately owned trees under the mistaken belief that those trees were part of the State's right of way. The State, like Appellees here, argued that it did not intend to take or damage Self's private property, and therefore was entitled to sovereign immunity. *Self*, 690 S.W.3d at 29.

In rejecting that argument, the Supreme Court was forceful and clear: "[T]he Constitution means what it says: the government must pay compensation when it intentionally takes private property for public use—even if the government mistakenly believes that it has a legal right to do so." *Id. at* 29–30. The Supreme Court recognized that if the government's belief turns out to be correct, the takings claim will fail. *Id.* But to deny jurisdiction entirely based on a claim of contractual right would "permit government to escape its constitutional duty to compensate its citizens for destruction of their property." *Id.* (citing *Hansen v. United States*, 65 Fed. Cl. 76, 81 (2005)).

15

### 2. *Self* confirms that the Amended Petition adequately alleges intent.

Despite ignoring *Self* in the first twenty-five pages of its brief, including seven pages arguing that Curadev did not plead the requisite intent, Appellees agree that the Supreme Court's decision in *Self* is relevant. Appellees' attempt to distinguish *Self* boils down to a complexity argument: cutting down trees is simple… Curadev's trade secrets are not… therefore the Supreme Court's guidance in *Self* does not apply. Not only is such a distinction immaterial, but it is also inaccurate. Regardless of the complexity of science, Curadev's claim is simple: Appellees destroyed Curadev's trade secrets with no legal right to do so and Curadev is entitled to just compensation.

Appellees quote *Self* to support its claim that when government acts on its rights under a contract, it is not exercising its sovereign powers. Appellees' Br. at 27. There are two key problems with Appellees' interpretation of *Self*, both omitted from their quote, as indicated by underline: "Similarly, no compensation is owed when the government acts on its rights under a contract to which the parties have consented because it is not exercising sovereign powers." 690 S.W.3d at 27.

16

Appellees ignore (1) the question of immunity is incongruent with whether compensation is ultimately owed; and (2) the parties must have consented.

Curadev is not a party to Appellees' contract with Takeda. That contract cannot be the basis for a sovereign immunity defense against Curadev. Even if the State is correct in arguing it enjoyed certain contractual rights, it may only employ these arguments to attack the takings claim at trial; the correct result is not dismissal at the pleadings stage based on sovereign immunity. *Id.* at 29.

### 3. *Brownlow* supports Curadev's takings claim with respect to intent.

Appellees also attempt to distinguish *Brownlow v. State*, which similarly supports the viability of Curadev's takings claim. Appellees' Br. at 28. Appellees misunderstand the significance of the case, claiming it is "inapposite." *Id.* In *Brownlow*, the State believed it had the legal right to the Brownlows' personal property (dirt) based on an agreement (agreed judgment) between the State and Brownlow concerning an easement to real property where the dirt was located. The State acted on that belief, which turned out to be wrong, and took Brownlow's property. When the

17

Brownlows brought a takings claim, the State argued the prior agreement allowed its actions, and that sovereign immunity protected it from any related claims. The court rejected that argument, determined that existence of the prior contract did not preclude a takings claim for property that the plaintiff alleged the State had no legal right to take, and reversed the lower court's dismissal.

Appellees present the same argument here. Rather than addressing Curadev's argument that it adequately pleaded the elements of a takings claim, Appellees seek to reframe Curadev's claim as a breach of contract claim (for which Appellees argue sovereign immunity would apply). Appellees' Br. at 24. Curadev's amended petition does not allege breach of contract, and contorting Curadev's pleadings to animate a sovereign immunity defense makes no sense.

The Research Agreement is between Appellee UTSW and third-party Takeda. Appellees' Br. at 24. Curadev is not a party and did not know of its existence until after it was terminated. And although Appellees claim that Curadev "contends that Appellees breached the contract," Curadev has not presented such contentions, certainly not at the page cited by Appellees. *Id*. Curadev is not seeking payment under

18

the Research Agreement or any other agreement, nor is Curadev seeking to enforce any contractual term. For Appellants' takings claim, the only remedy Appellants seek is just compensation.

Appellees treat sovereign immunity as a defense in search of a claim. It simply does not apply to Curadev's takings claim. The State cannot assert sovereign immunity—and certainly not at the pleadings stage—simply by reciting that it had certain contractual rights.

**B.     Curadev alleged that Appellees' intentional acts resulted in the taking, damaging, or destruction of Curadev's property.**

Appellees complain about the specificity to which Curadev identified its trade secrets. Such complaints are misplaced and not grounds for a plea to the jurisdiction. Curadev adequately described its rights, putting Appellees on fair notice of Curadev's claim that Appellees destroyed Curadev's trade secret property.

If Appellees wanted to complain that Curadev's Amended Petition inadequately described its trade secrets, the proper response was to submit a special exception. *See* Tex. R. Civ. P. 91 (pleading insufficiencies must be pointed out "with particularity"). This Court should reject Appellees' attempt to complain now.

19

As described in the Amended Petition (and Original Petition) and again explained in Appellants' Brief, Curadev has alleged that it had a vested property right in its trade secret intellectual property. *E.g.*, Appellants' Br. at 11; Am. Pet at ¶ 58 ("Curadev was, at material times, the owner of trade secrets involving Curadev's STING agonist compound technology, including the test compound provided to UTSW by Takeda, C53, and knowledge generated from Curadev's prior research evidencing their unique binding features.").

Appellees claim that because UTSW entered the Research Agreement with Takeda, it had the right to publish all results from their work on Curadev's compound, and that their rights lasted at least through September 2, 2021. Appellees' Br. at 6, 37. This is wrong. Appellees knew that Curadev did not consent to publication. If Appellees truly believed they had the right to publish and exploit what they learned, then they wouldn't have scoured Curadev's library of compounds for an analog to publicize and circumvent the restrictions.

Furthermore, Appellees had no greater rights than what Takeda had. Those rights terminated with the Research Agreement. Appellants' Br. at 19. Appellees respond that Curadev did not allege that the

20

Research Agreement termination was communicated to Appellees, but as discussed above, Appellees mindset is irrelevant to whether it took Curadev's property.

Regardless, Takeda informed Appellees that Curadev, not Takeda, owned the test compound no later than November 16, 2020. CR.684. Appellees were on notice that Takeda no longer had any rights to Curadev's compound, and that any right stemming from Takeda's rights would likewise cease. The core of Curadev's takings claim is based on the Appellees' intentional actions after the termination and after Appellees learned of Curadev's existence and corresponding trade secret rights.

### C. Appellees acknowledge that the Supreme Court has recognized that intellectual property may be the subject of takings claim.

Appellees acknowledge that intellectual property may be subject to a takings claim and that sovereign immunity is not a defense to a constitutional takings claim. Appellees' Br. at 17-18. So Appellees twist and water down Curadev's takings claim and then argue that it has no basis in law. Appellees assert that trade secrets can be taken by disclosure and misuse, and because Appellees did not "disclose" the test

21

compound, only "misuse" remains. Appellees' Br. at 36. To be clear, Appellees disclosed *and* misused Curadev's trade secrets.

Appellees' purported summary of Curadev's takings claim is copied here (blue). Although similar to Curadev's allegations, it is inaccurate or incomplete in a few key areas. Curadev's slightly revised version is presented (green).



| Appellees misused that knowledge to select an entirely different, and publicly disclosed, compound, C53 | Appellees misused that knowledge to bypass a broad search and select from Curadev's library a similar, analogous compound |
|---|---|
| ↓ | ↓ |
| Appellees conducted research on the entirely different, publicly disclosed compound, C53 | Appellees conducted similar research on the similar, analogous compound |
| ↓ | ↓ |
| Appellees made their own discoverys and published their own research on the entirely different, publicly disclosed compound, C53 | Appellees confirmed that the similar compound exhibited similar valuable binding characteristics and publicly disclosed those characteristics |
| = | = |
| Supposed taking of Curadev's trade secret in the secret Compound | Taking of Curadev's trade secrets in the secret compound and its characteristics |

Appellees argue that Curadev invites the court to waive immunity for misappropriation claims. That is not so. Here, the taking is the wrongful destruction of Curadev's trade secret. There may be forms of

23

misappropriation that do not result in the destruction of the trade secret property. This one did.

## IV. CURADEV HAS ADEQUATELY PLEADED THAT APPELLEES WAIVED SOVEREIGN IMMUNITY FOR THE NON-CONSTITUTIONAL CLAIMS.

Appellees overreach when they assert that the "Texas Supreme Court has consistently refused to recognize a waiver-by-conduct exception against governmental entities." Appellees' Br. at 43. As an initial matter, the string of cases Appellees rely upon are factually and legally inapposite because they all focused on breach-of-contract claims and declined to find waiver in part because, in the years since *Federal Sign*, Texas created "comprehensive schemes that allow contracting parties to resolve breach-of-contract claims against the government." *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 414 (Tex. 2011) (declining to recognize waiver-by-conduct exception in a breach-of-contract suit against a governmental entity in light of new statutory scheme governing such claims); *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 857 (Tex. 2002) (same); s*ee also Oncor Elec. Delivery Co. NTU, LLC v. Wilbarger Cnty. Appraisal Dist.*, 691 S.W.3d 890, 907 (Tex. 2024) (holding that disputes over avoidability of

24

agreements between taxpayers and appraisal-review boards does not create jurisdictional question). Curadev does not assert any contract claims.

While true that, in the cases cited by Appellees, the Court did not find sufficient basis to find that a state entity's inequitable conduct estopped it from asserting immunity, the Court has never categorically rejected the notion. To the contrary, the Court has recognized that "we have not absolutely foreclosed the possibility that the judiciary may abrogate immunity by modifying the common law." *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 699 (Tex. 2003). Thus, the Texas Supreme Court has recognized that, "[o]n 'rare occasions,' we may recognize a waiver absent explicit [statutory] language." *Tex. Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 622 n.4 (Tex. 2011) (quoting *Taylor*, 106 S.W.3d at 697).

So, while Appellees try to denigrate it, the law has not changed since *Federal Sign,* when the Texas Supreme Court recognized that under certain circumstances it would find a waiver of immunity by estoppel where the governmental entity's actions make it inequitable for a governmental entity to assert immunity. *See Fed. Sign v. Tex. S. Univ.*,

25

951 S.W.2d 401, 408 n.1 (Tex. 1997) (noting that "[t]here may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract"). Justice Hecht's concurring opinion in *Federal Sign* observed that, under some circumstances, a governmental entity's behavior that induced the plaintiff to perform the contract would estop the governmental entity receiving the benefits of the contract from asserting immunity from suit. *Id.* at 412–13 (Hecht, J., concurring).

And that is just what the Amended Petition pleads: a takings claim where the governmental entity's actions make it inequitable to assert immunity—Appellees gained access to Curadev's proprietary information by entering the Research Agreement that restricted its use to limited research purposes, for a limited time, and subject to strict confidentiality requirements. Those confidentiality requirements were also required by statute. *See* Tex. Educ. Code § 51.914(a). Instead of adhering to those limitations, Appellees continued to secretly utilize Curadev's trade secrets, publish them as their own findings, file their own patents, and then separately seek to commercialize that proprietary information through a collaboration with Curadev's competitors. CR.546, 552-54, 560, ¶¶ 21, 44, 45, 48, 71. The waiver-by-conduct exception to

26

immunity is evaluated "on the facts of each case, not as a categorical matter or bright-line rule," as Appellees argue. *Tex. S. Univ. v. State St. Bank & Tr. Co.*, 212 S.W.3d 893, 907 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). In these circumstances, Appellees should not be allowed to insulate themselves from any recourse by claiming sovereign immunity, and they cite no authorities supporting that result.

## V. THE TORT CLAIMS ACT DOES NOT "MANDATE DISMISSAL" OF THE PROFESSORS.

Instead of addressing the merits of the claims against the Professors, Appellees renew their argument that the election-of-remedies provision in the Tort Claims Act ("TCA") requires their "automatic" dismissal. This is incorrect and relies on a mistaken reading of both the TCA and the nature of Curadev's claims.

### A. The election-of-remedies provision does not apply to *ultra vires* claims.

First and foremost, Appellees' arguments on this score are entirely meritless because Curadev pleads *ultra vires* claims against the Professors, and the TCA does not apply to such claims. Appellees repeatedly cite to precedent cases in which the Texas Supreme Court has held that "all *tort theories* alleged against a governmental unit. . . are

assumed to be under the TCA" (Appellees' Br. at 53), but none of those cases involved *ultra vires* claims. Those are plainly outside of the TCA's scope.

For one, the TCA's election-of-remedies provision applies to the "filing of a suit *under this chapter*…." Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a). Appellees skip over this crucial limitation. In their brief, they argue that "the election-of-remedies provision now provides that the 'filing of a suit' against a governmental unit constitutes an 'irrevocable election' that "immediately and forever bars any suit or recovery" against an employee of that governmental unit," suggesting that the Court need not evaluate the nature of the claims asserted. Appellees' Br. at 54. That suggestion is wrong.

For starters, the TCA expressly provides that the remedies it authorizes "are in addition to any other legal remedies," so it is no surprise that the Texas Supreme Court has repeatedly refused to apply the TCA's election-of-remedies rule to non-tort claims for which immunity does not apply. *See, e.g.*, *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (statutory discrimination claim was not suit "filed under" the TCA and thus fell outside §101.106(e)'s

28

purview); *Tex. Dep't of Aging & Disability Servs. v. Cannon*, 453 S.W.3d 411, 416 (Tex. 2015) ("[S]ection 1983 claims ... assert[ed] against ... [governmental] [e]mployees ... are not brought under the Tort Claims Act.").

Noticeably, Appellees do not claim that sovereign immunity applies to *ultra vires* claims. And none of the Texas Supreme Court cases cited by Appellees holds otherwise. *Mission Consol. Indep. Sch. Dist.*, 253 S.W.3d 654 (no *ultra vires* claim; plaintiff alleged defamation, infliction of emotional distress, statutory claims); *Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios*, 542 S.W.3d 530, 538–39 (Tex. 2017) (no *ultra vires* claim; plaintiff alleged tortious interference with business relationship and breach of contract); *Molina v. Alvarado*, 463 S.W.3d 867 (Tex. 2015) (no *ultra vires* claim; plaintiff alleged claims for negligent/reckless driving); *Franka v. Velasquez*, 332 S.W.3d 367, 379 (Tex. 2011) (no *ultra vires* claim; plaintiff alleged medical malpractice claims against doctors in their individual capacities); *Lazarides v. Farris*, 367 S.W.3d 788, 805 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (holding that, "because [the plaintiff] is alleging *ultra vires* claims, the suit would not be barred under [TCA] section 101.106(b)").

Appellees repeatedly cite the Legislative Branch's role in waiving sovereign immunity, but the Texas Supreme Court has stated that, "[e]ven if a governmental entity's immunity has not been waived by the Legislature, a claim may be brought against a governmental official if the official engages in *ultra vires* conduct." *City of Houston v. Houston Mun. Employees Pension Sys.*, 549 S.W.3d 566, 576 (Tex. 2018); *see also Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016) ("[W]hen a governmental officer is sued for allegedly ultra vires acts, governmental immunity does not apply from the outset. Thus, our *ultra vires* cases do not run afoul of our long-standing recognition that "it is the Legislature's sole province to waive or abrogate sovereign immunity."); *Fed. Sign.,* 951 S.W.2d at 404 ("A private litigant does not need legislative permission to sue the State for a state official's violations of state law.") (citations omitted);

Thus, even if the TCA's election-of-remedies provision applied to Curadev's tort claims against the Professors, it would not require dismissal of the entire "suit" as Appellees argue; rather, the *ultra vires* claims would remain because the Texas Supreme Court has expressly recognized that the election-of-remedies provision that Appellees rely on

30

must be applied on a claim-by-claim basis. *See Cannon,* 453 S.W.3d at 416 ("Although subsection (e) references the filing of a "suit" and dismissal of the "employees" rather than the filing and dismissal of particular claims, the propriety of dismissal must be evaluated on a claim-by-claim basis to give effect to the statute."); *City of Arlington v. Randall,* 301 S.W.3d 896, 904–05 (Tex.App.–Fort Worth 2009, pet. denied) (holding that subsection (e) required the dismissal of claims against an employee for negligence and damages for alleged state constitutional violations, but did not require dismissal of a claim for a declaratory judgment for such violations). *See, e.g., Kilgore Indep. Sch. Dist. v. Axberg,* 535 S.W.3d 21, 35 (Tex. App.—Texarkana 2017, no pet.) (TCA's election-of-remedies provision did not apply where plaintiff "brings declaratory judgment claims against [the state entity] and ultra vires claims against [the state employee]").

## B. The Court should reject Appellees' invitation to ignore the amended petition.

Because there is no real argument for applying the TCA to Curadev's *ultra vires* claims, Appellees urge the Court to simply ignore them. Specifically, they argue that Curadev's original petition contained

only tort claims (not *ultra vires* claims), and "an amended pleading cannot undo a plaintiff's original irrevocable election under the TTCA." Appellees' Br. at 59. In support, Appellees rely on *Univ. of Tex. Health Sci. Ctr. of Hous. v. Rios*, 542 S.W.3d 530, 538–39 (Tex. 2017). In *Rios*, the plaintiff asserted tort claims against the UT Health Sciences Center (the "Center"), and asserted tort claims against a number of faculty doctors. Citing the TCA's election-of-remedies provision, the defendants moved to dismiss the tort claims against the doctors, who were all employees of the Center. *Id*. at 532-33. Rios then amended his petition to nonsuit the tort claims against the Center, asserting them against the doctors only. When defendants filed their original motion to dismiss, they were entitled to dismissal of the tort claims Rios asserted against both them and the Center, which were all the tort claims pleaded. The Court cited its prior holdings that, under the TCA's election-of-remedies provision, a plaintiff's nonsuit following a motion to dismiss does not operate to deny the movant a ruling on its motion. Thus, following Rios' amended petition, defendants remained entitled to dismissal of the tort claims asserted against the Doctors in his original petition, as requested in defendants' original motion to dismiss. *Id*. But that holding does not

apply here because Curadev did not "amend[] [its] pleadings to 'omit claims against the government in an attempt to preserve tort claims against employees that would otherwise be subject to dismissal.'" *Id*. at 537.

Rather, this case is analogous to *Tex. Dep't of Aging & Disability Services v. Cannon*, 453 S.W.3d 411 (Tex. 2015). There, a plaintiff sued a state hospital and its employees for negligence after her son died in the hospital's care. The defendants moved for dismissal under § 101.106(a) and (e) of the TCA. *Id*. at 413. Before the motion was decided, the plaintiff amended her petition to add claims under 42 U.S.C. § 1983 for constitutional violations against the hospital and employees individually, then subsequently agreed to non-suit all her original tort claims. With only Section 1983 claims remaining, the trial court denied the Department's plea to the jurisdiction and denied the motions to dismiss the Employees. The Supreme Court affirmed, reasoning that "because court action is required to effectuate dismissal of government employees, nothing in subsection (e) precludes a plaintiff from amending her petition before that dismissal in accordance with applicable procedural rules." *Id*. at 416-17. The role of the election-of-remedies provision is "to ensure that

tort claims within the purview of the [TCA] do not proceed against a government employee for conduct within the scope of his employment….*But those provisions simply do not apply to claims against the employee individually that are outside the [TCA's] scope." Id.* at 418 (emphasis added).

Like the plaintiff in *Cannon*, Curadev amended its petition before the Court ruled on Appellees' original motion to dismiss pursuant to the TCA. In its amended pleading, it asserted *ultra vires* claims against the Professors that indisputably fall outside the TCA's scope. The Texas Supreme Court has expressly countenanced that approach, and Appellees cite no contrary authorities.

Appellees describe Curadev's decision to amend its petition as "evasive" and "artful." Appellees' Br. at 53. But it is Appellees who are being evasive through their misguided reliance on the TCA's election-of-remedies provision. On the one hand, they argue that Curadev's suit against UTSW mandates dismissal of its claims against Bai and Zhang. At the same time, they argued below that Curadev's "allegation that Bai and Zhang acted *ultra vires* means that UTSW is not a proper party to the case." CR.1089-92. Appellees cited no authority holding that a

plaintiff cannot assert ultra vires claims against a government official while simultaneously asserting other claims against the government entity, and these arguments do not deprive the trial court of jurisdiction. After all, TCA Section 101.106 is meant to provide an "*election* of remedies." But Appellees' construction would eliminate any avenue to relief. *See, e.g.*, *City of Houston v. Vallejo*, 371 S.W.3d 499, 505 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (holding TCA election-of-remedies provision does not create "fatal-filing rule that immunizes both the governmental unit and its employee").

## VI. CURADEV HAS ADEQUATELY PLEADED AN *ULTRA VIRES* CLAIM AGAINST THE PROFESSORS.

Given the futility of their TCA arguments, Appellees finally argue that Curadev simply "has not plausibly alleged any *ultra vires* action anyway." Appellees' Br. at 60. This too lacks merit.

Under the *ultra vires* doctrine, Texas has long recognized an exception to immunity for suits brought against state officials, on the ground that those officials have acted outside of their statutory authority. *See, e.g.*, *City of El Paso v. Heinrich*, 284 S.W.3d 366, 371-73 (Tex. 2009); *Cobb v. Harrington*, 190 S.W.2d 709, 712 (Tex. 1945). Thus, the doctrine

of sovereign immunity does not apply to claims for injunctive relief seeking to force governmental officials to follow the law or to quit acting outside the scope of their authority. *Heinrich*, 284 S.W.3d at 371; *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991); *Bullock v. Calvert*, 480 S.W.2d 367 (Tex. 1972). To fall within this *ultra vires* exception, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372.

Appellees impliedly argued that Appellees Bai and Zhang "got it wrong" within their authority, but do not go as far as to admit that their actions were authorized. Appellees' Br. At 62; CR.1088. Nor did Appellees offer any cognizable boundary for the trial court to evaluate whether the Professors' actions were "erroneous decisions" that were within their authority. To the contrary, Appellees admitted that "no state entity explicitly authorizes its employees to violate the law," but provided no comment as to what UTSW implicitly authorized its employees to do. CR.1088. Appellees do not and cannot plausibly argue that a government officer's tortious conduct for personal gain (which is unlawful by its very

36

nature) somehow constitutes "an exercise of discretion" within their lawful scope of authority. *Heinrich*, 284 S.W.3d at 372.

To assert a valid *ultra vires* claim, the plaintiff "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Heinrich*, 284 S.W.3d at 372. "To assert an *ultra vires* claim" based on a lack of lawful authority, claimants must "plead and prove two elements: '(1) authority giving the official some (but not absolute) discretion to act and (2) conduct outside of that authority.'" *Pidgeon v. Turner*, 625 S.W.3d 583, 600 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (quoting *Hall v. McRaven*, 508 S.W.3d 232, 239 (Tex. 2017)).

Appellees begin by erecting a straw man. They argue that Curadev's claim fails under the Texas Supreme Court's admonition that "failing to comply with a contract does not give rise to an ultra vires claim." Appellees' Br. at 61. According to Appellees, "Curadevs' allegations fixate upon Bai and Zhang's acts as researchers and employees at UT Southwestern, and a central pillar of their. . . theory of liability is a contract between Takeda and UT Southwestern." Appellees' Br. at 51.

37

But this mischaracterizes Curadev's claims. Yes, in describing the Professors' unlawful conduct, Curadev refers to the Research Agreement. But that is by necessity to illustrate the bounds of what was lawful. It does not turn this into a contract claim. To the contrary, the Texas Supreme Court has explained that, "where a statute or the constitution requires that government contracts be made or performed in a certain way, leaving no room for discretion, a suit alleging a government official's violation of that law is not barred, *even though it necessarily involves a contract.*" *Heinrich*, 284 S.W.3d at 371. That is the case here. Not only was Appellees' unlawful disclosure and misappropriation proscribed by the terms of the Research Agreement, it was also proscribed by statute. Section 51.914(a) of the Texas Education Code provides:

> In order to protect the actual or potential value, the following information is confidential and is not subject to disclosure under Chapter 552, Government Code, or otherwise….any information relating to a product, device, or process, the application or use of such product, device, or process, and any technological and scientific information (including computer programs) that is the proprietary information of a person, partnership, corporation, or federal agency that has been disclosed to an institution of higher education solely for the purposes of a written research contract or grant that contains a provision prohibiting the institution of higher education from disclosing such proprietary information to third persons or parties….

Likewise, Appellees raise another red herring when they point out that "it is not an ultra vires act for an official to make an erroneous decision within the authority granted," and "research and publication clearly fall within the authority of Professors at UT Southwestern." Appellees' Br. at 62-63 (citing *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 68 (Tex. 2018). Again, that contradicts Curadev's well-pled allegations, which state that "Individual Defendants Bai and Zhang's conversion, misappropriation, and taking were committed without legal authority and were not within their discretion." It also disregards the statutory requirement for higher education institutions to keep such information confidential. *See* Tex. Educ. Code § 51.914(a)

Finally, Appellees argue that Curadev has not pled an *ultra vires* claim because the amended petition includes claims for damages. But Curadev's petition does not seek damages in relation to its *ultra vires* claims—it only seeks prospective injunctive relief. This is more than sufficient for the pleading stage, where the Court must construe pleadings liberally to determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction. *See, e.g.*, *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004);

*Bell v. City of Grand Prairie,* 221 S.W.3d 317, 325 (Tex.App.-Dallas 2007, no pet.) (holding that firefighters' requested declaration was barred for past statutory violation, but not for future violations).

## VII. CURADEV TIMELY OBJECTED TO IMPROPER HEARING IN FRONT OF THE ASSOCIATE JUDGE.

Appellees argue that Curadev's multiple objections to proceeding before the associate judge were waived as untimely or insufficient to preserve the objection. Appellees' Br. at 64-66. Appellees cite the 10-day deadline to object to an associate judge hearing the case. *Id*. at 64.

Appellees cannot dispute that Curadev timely objected to proceeding before the Associate Judge for the original setting. *Id*. After receiving notice on October 4, 2024, that the hearing would proceed before the Associate Judge, Curadev filed its objection on October 11, 2024, within the 10-day limit. *Id*.; Supp.CR.81. On October 29, 2024, Appellees amended the Hearing Notice to a new date. Supp.CR.83-84. Curadev did not withdraw its prior objection. Because the Court had not yet ruled on Curadev's objection, on November 18, 2024, approximately two weeks before the hearing, Curadev renewed its request to set the

hearing before the Presiding Judge and restated its objection to the Associate Judge. Supp.CR.91.

The Associate Judge was and is without authority to decide this dispute. Curadev is not asking this Court to remand without ruling on the issues raised herein. But if the Court agrees with Curadev that Appellees' Plea to the Jurisdiction was improperly granted and returns the case to the trial court, Curadev requests this Court order the case to proceed before the elected judge, not the Associate Judge.

## VIII. APPELLEES' OTHER MISCELLANEOUS ATTACKS ARE MERITLESS.

Appellees purport to find two "factual discrepancies" between the Amended Petition and Appellants' Brief. Appellees' Br. at 11. The two alleged discrepancies are: 1) Curadev's descriptions of the agonists Curadev designed as "that were able to bind" in its brief compared to "that likely bound" in its Amended Petition and 2) Curadev's explanation in its brief that it has an interest in intellectual property developed using Curadev's trade secrets compared to language in Appellees' contract with Takeda that those entities agreed to jointly share ownership in their

inventions. *Id*. Neither "discrepancy" is inconsistent or even remotely relevant to the issues on appeal.

For the first, there is no relevant difference between "likely bound" and "were able to bind." At most, they represented varying degrees of assertiveness/cautiousness regarding a now-established fact, entirely appropriate as we moved into the appellate stage. Importantly, the distinction is irrelevant to Curadev's claims. Under either, Curadev's trade secret information was incredibly valuable.

For the second, the supposed discrepancy is between language in a contract that Curadev was not a party to on one hand, and Curadev's brief on the other. They are not inconsistent. That Appellees apparently found no other discrepancies confirms that Curadev's briefing is consistent with its Amended Petition and provides further support for reversal.

## PRAYER

For the foregoing reasons, the Court should reverse the trial court's order.

Dated:  March 31, 2025     Respectfully Submitted,

**Allen Overy Shearman Sterling US LLP**


*/s/ David P. Whittlesey*

David P. Whittlesey
Texas Bar No. 00791920
david.whittlesey@aoshearman.com
Trey Hebert
Texas Bar No. 24067819
trey.hebert@aoshearman.com
300 West 6th Street, Suite 2250
Austin, TX 78701
(512) 647-1900 (tel)

Jacob Fields
Texas Bar No. 24115134
jacob.fields@aoshearman.com
The Link at Uptown
2601 Olive St., 17th Floor
Dallas, TX 75201
(214) 271-5777 (tel)

Attorneys for Appellants

43

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Texas Rule of Appellate Procedure 9.4(i)(2)(B) because it contains **7,496/7,500** words, excluding the parts of the brief exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ David P. Whittlesey*

David P. Whittlesey

## CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2025, a true and correct copy of this document was served on the following counsel via email and/or electronic filing:

*/s/ David P. Whittlesey*

David P. Whittlesey

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Ashley Duncum on behalf of David Whittlesey
Bar No. 791920
ashley.duncum@aoshearman.com
Envelope ID: 99106150
Filing Code Description: Other Brief
Filing Description: 20250331 Appellants Reply Brief
Status as of 4/1/2025 8:01 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Nathaniel St Clair | | nstclair@jw.com | 3/31/2025 9:12:14 PM | SENT |
| David Schlottman | | dschlottman@jw.com | 3/31/2025 9:12:14 PM | SENT |
| Olin Hebert | 24097819 | trey.hebert@aoshearman.com | 3/31/2025 9:12:14 PM | SENT |
| David Whittlesey | 791920 | david.whittlesey@aoshearman.com | 3/31/2025 9:12:14 PM | SENT |
| Jacob Fields | 24115134 | jacob.fields@shearman.com | 3/31/2025 9:12:14 PM | SENT |
| Hailey Oestreich | | hoestreich@jw.com | 3/31/2025 9:12:14 PM | SENT |
| Demi Williams | | dswilliams@jw.com | 3/31/2025 9:12:14 PM | SENT |

Associated Case Party: Curadev Pharma PVT. LTD

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| David P.Whittlesey | | david.whittlesey@aoshearman.com | 3/31/2025 9:12:14 PM | SENT |
| Jacob Fields | | jacob.fields@aoshearman.com | 3/31/2025 9:12:14 PM | SENT |
| Ashley CegielskiDuncum | | ashley.duncum@aoshearman.com | 3/31/2025 9:12:14 PM | SENT |
| Amanda Adame | | amanda.adame@aoshearman.com | 3/31/2025 9:12:14 PM | SENT |